The cause stood over to this term for advisement; and now the following opinions were delivered : —
Sewall, J.
Two questions have arisen in this cause. 1. Whether the evidence offered at the trial maintained the allegations of the third count, upon which a verdict has been found for the defendant; and, 2. Whether the plea in bar to the second count is a sufficient justification, either by excusing the defendants from the performance of their promise, or to the effect of showing that there had been no breach of it when this action was brought.
In the third count, upon which the verdict has been found, the plaintiffs state a sale of sugars to the defendants, and a delivery of them on the 9th of December, 1807, and a promise of the defendants to pay therefor in money, at three instalments; the two last instalments at the expiration of four months from the delivery of the sugars. At the trial of the general issue, joined upon this count, the evidence, as reported, was a sale of sugars and an agree- *277 merit to pay therefor two sums of money at two instalments, and a third sum in debentures.
The variance between the count to be proved and the evidence is manifest; the balance due on the sale of the sugars was paj able in debentures, and not in money. Perhaps the third count, and certainly a general indebitatus assumpsit for the balance in controversy between these parties might have been maintained by proving a sale of sugars for money, and an agreement that a part of the sum should be paid and received in debentures, if delivered within four months, supposing the time elapsed, and the deben turcs not delivered, when the action was brought. (3)
* But the third count alleges a special promise of money [ * 330 J payable in three instalments, which is to be proved, if not precisely, yet in every material circumstance, as it is alleged. This seems to be the doctrine in the case cited in the argument of Brooke & Al. vs. White, and in many other decisions, which might be cited to the same purpose. In the actual state of the evidence, therefore, proving a promise of debentures for the third instalment, the verdict was, I think, rightly taken for the defendants; they had not made the promise alleged in the third count.
In the second count, the promise of the defendant is alleged as in the third, excepting that the balance supposed to be due is stated, as arising upon a promise to deliver to the plaintiffs, within a reasonable time, certain certificates of debenture of the United States of the value ef 1929 dollars 68 cents. Had there been, in this respect, a breach of the defendant’s promise, when this action was commenced ?
The plea in bar is, substantially, that the said certificates of debenture were certificates to be granted at the custom-house of the United States on the exportation of the sugars, and not to be obtained until exportation, for which a reasonable time had been allowed ; and that within such reasonable time an act of the congress of the United States, continuing in force when this action was commenced, had prohibited and prevented all such exportation ; and so, without any default, the defendants had been, and yet are, unable to deliver the said debentures.
The replication contains no material allegation in answer to'this defence. The acceptance by the defendants, subsequent to the embargo, of the sugars purchased, and in legal contemplation delivered at the time of the sale, is wholly immaterial. The sale and delivery previous to the embargo, are averred in the third count as well as the second.
*278 The question then is, whether the act laying the embargo operated in any manner to excuse the defendants from [ * 331 ] * the performance of their promise to deliver a certain amount of debentures, as a part of the price of their purchase of sugars; or to excuse them for not procuring and delivering the debentures, while that act continued in force.
After examining the decisions cited in the argument, and other authorities upon the general question, I am not satisfied that the embargo act had the operation contended for, of dissolving a contract for delivery of debentures; or, as I understand the argument, of excusing the party liable upon such promise entirely, both from the obligation of procuring the debentures, and of rendering an equivalent in money. An embargo, considered as a temporary suspension of commerce, does not operate a dissolution of any mercantile contract. (4) (b)
If the embargo enacted by congress in 1807, was to be con strued a perpetual prohibition of commerce, as for a time it was apprehended to be, I am not satisfied that the defendants would have been, in that event, entirely discharged from their promise. It is true that the law will not compel impossibilities; so neither will it do any man an injury ; that is, inflict upon an innocent party a positive loss, accompanied with a privation of right.
The distinction cited from Aleyn’s reports, by Justice Lawrence, in the case of Hadley vs. Clarke & Al., would apply, I think, in the case at bar, supposing the embargo to have been a perpetual prohibition of commerce. “ Where the law creates a duty or charge, and the party is disabled to perform it, without any default in him, and he hath no remedy over, there the law will excuse him; but when the party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity; because he might have provided against it by his contract.”
It may be further observed, that, in the case at bar, there was nothing unlawful in the contract itself, originally; nor was it made unlawful by the embargo; and, although the [ * 332 ] * delivery of the specific debentures, to be obtained on the exportation of the sugars, became, by that act, impracticable, yet this did not disable the defendants from paying, or the plaintiffs from recovering, the discount allowed upon the price of the sugars, or a reasonable indemnification and equivalent for the debentures, engaged as the consideration of that discount,
But, considering the embargo act to have been, as it happily *279 proved in the event to be, a temporary suspension of exportation, and especially connecting with it the supplementary act of congress, passed a few days after the first act, and in the same session, — which provides that the time during which the embargo act shall continue in force, shall not be computed as a part of the term in which merchandise imported must be exported, in order to be entitled to a drawback of duties, — I am of the opinion, that there had been no breach of the promise of debentures, when this action was commenced.
The argument, by which this opinion is deduced, may be thus stated. That contract has, in the subject matter of it, a direct reference to the revenue laws of the United States; and the promise of debentures must be intended to be, and by the pleadings it is confessed to be, a promise of the specific debentures, to accrue on the exportation of the sugars sold and delivered by the plaintiffs ; and, by a necessary construction, the defendants were entitled to the same term or period for exporting, as the plaintiffs themselves would have had ; the contract being, in this respect, free from any express or implied restriction. That period, as then prescribed by the revenue laws of the United States, had not elapsed, when the embargo law, prohibiting all exportation, took effect. Construed as a temporary suspension of foreign commerce, the embargo act did not operate a dissolution of the contract between these parties ; but in suspending the right of the defendants to export their sugars, it necessarily suspended the right of the plaintiffs to demand debentures due only on exportation; or not * due [ * 333 J while the right to export with a title to debentures continued ; that being the reasonable time allowed to the defendants, and no exportation, or forfeiture of the right to export, having taken place. And whatever may be said of the embargo act in a political view, it must be construed, I think, a temporary suspension only, as applied to the subject matter of this contract; especially after the supplementary act mentioned was enacted, which extended the privilege of exporting with a title to debentures, or a drawback of duties. This privilege having been transferred, with the sugars, from the plaintiffs to the defendants, without any restriction upon the exercise of it; the time originally prescribed, any suspension of exportation, or extension of the time allowed for exporting, must be considered as within the intentions of the parties; so far at least as they had referred themselves to the revenue laws, ultimately resting on the control to be exercised, and the regulations prescribed and to be prescribed by the legislature of the Unitea States.
The legal consequences to these parties of an utter privation, c.t *280 loss of the privilege of exporting, or of the title to the debentures engaged to the plaintiffs, we are not, on this occasion, called upon to determine. On that question, I incline, however, to the opinion already intimated ; that in the event supposed, however involuntary the consequent breach of promise on the part of the defendants would have been, their liability to the plaintiffs for an equivalent of the debentures, if not for the whole discount allowed on the sales, would have continued, notwithstanding the legal impossibility of a specific performance of their promise.
At the time of commencing this action, the embargo act, connected in construction, as it must be, with the supplementary act, applicable to the subject matter of the contract in question, was not to be considered as an abolition of foreign commerce. And, notwithstanding these extraordinary laws, the defendants retained the right of exporting their sugars, with a title to the de- [ * 334 ] bentures engaged to the plaintiffs. * And the mere suspension of the exercise of this right operated equally upon the plaintiffs and the defendants; was created by laws, to which both were parties; and formed a part of that system of regulation, to which they had referred themselves, in the implied intentions, if not in the express lettef of their contract.
This action was therefore commenced, when there had been no breach of the defendant’s promise, as it is explained in their plea in bar; and judgment ought, in my opinion, to be entered for the defendants, as well upon the demurrer as upon the verdict; the replication being immaterial and insufficient, and the plea in bar being a sufficient answer to the second count.
Sedgwick, J.
There are two general questions in this case, one arising on the motion of the plaintiffs for a new trial, and the other on the pleadings.
The trial was had upon the third count, in which the plaintiffs allege, that the defendants, in consideration of certain sugars sold and delivered to them by the plaintiffs, promised to pay therefor three several sums of money at different periods. On the general issue pleaded, it was proved that the defendants had paid the two first-mentioned sums of money. There was no question as to the amount, which was to be paid for the sugars; but it was agreed, that the last-mentioned sum was, by the contract, to be paid in debentures, which were to be issued on the exportation of merchandise, for which a drawback is allowed by the laws of the United States. This was so paid by the defendants to the plaintiffs, before the trial, but after the commencement of the action.
Whenever full satisfaction has been received by the plaintiff before the trial, it is as effectual a bar to his recovery, as if it had *281 been paid before the commencement of the action. This was deter mined in the case of Bird vs. Randall. (5) That was an action brought by the plaintiff against the defendant, for seducing his journeyman to leave his service. Burford, the journeyman, had covenanted to serve *the plaintiff, in his [ * 335 ] trade of silk-dresser for five years, for which the plaintiff was to pay certain stipulated wages. For the performance of the contract, articles of agreement were entered into, by deed, whereby the parties agreed to perform, each his respective part, under a penalty of one hundred pounds. Before the expiration of the time of service, the defendant enticed Burford to leave the plaintiff’s service. The plaintiff brought an action of debt for the penalty against Burford, and recovered judgment for it with costs. After-wards, and before any satisfaction of the judgment had been obtained, this action for the seduction was commenced; after which, and before the trial, the judgment against Burford was satisfied. The question was, whether the action, under the circumstances of the case, could be supported against Randall for the seduction.
For the plaintiff it was insisted that, for two reasons, the defendant could not avail himself of the payment of the judgment by Burford. 1. Because the payment of a penalty, according to con tract, by one, could not be deemed a satisfaction for a tort by another; that a recovery in an action for a breach of contract could not be a bar to an action against another for a tort. 2. That at the time of bringing the action, there was no actual satisfaction had; therefore it ought to have been pleaded. On both points, the Court were unanimously against the plaintiff; and upon the last point, that a full satisfaction after the commencement of the action, and before the trial, need not be pleaded, but might be given in evidence under the general issue, the opinion of the Court was so decided, that it was strongly suggested that the Court would, upon the application of the defendant by way of motion, have stayed the plaintiff’s further proceedings against him, upon the defendant’s showing that the plaintiff had actually received the money recovered by him in his former action against the servant.
Now, in the case at bar, the price of the sugars was to be paid in three instalments. The two first, it was proved, * had been paid ; and it was agreed that the [ * 336 ] ast was, by the contract, to be paid in debentures, which had been delivered by the defendants, and received by the plain tiffs, before the trial.
*282 In all cases of assumpsit, whatever shows that a complete satis faction has been received by the plaintiff may be given in evidence under the general issue. It is true, that before the decision of the case of Bird vs. Randall, it might have been doubted whether such satisfaction could be given in evidence under the issue of not guilty in an action for a tort; but it ought never to have been a doubt whether there was a distinction between those cases, where the satisfaction was made before, and those where it was made after the commencement of the action. In the reason, nature, or justice, of the thing, there can be no such distinction.
Besides this, without entering upon the ground upon which the direction of the judge at the trial was principally contested by the counsel, I am of opinion that the direction was right, for this obvious reason, that it is impossible for the Court to take judicial notice, that a sum of certificates of debenture, which was in fact promised, is of the same value as specie, which, in the count on which the trial was had, is alleged to have been promised. Indeed, I have not any knowledge that so is the fact. It follows, of course, that it is impossible for us to say, from this record, that the contract alleged and the contract proved are substantially the same. This, therefore, is not like the case of Brooke & Al. vs. White, cited at the bar, and other cases, where it is apparent that the contract alleged and the contract proved are substantially the same. I do not, however, mean to suggest an opinion whether the principle, which governed the case of Brooke & Al. vs. White, is, or is not, well founded.
As it is agreed that all the counts are for the same cause of action, and as it appears, from the report of the trial, that the [ * 337 ] plaintiffs have received full satisfaction for it, it * would be unnecessary to proceed to consider the question arising upon the pleadings, but for a suggestion from the bar, that there are several other actions, which depend upon the same circumstances, and which will be governed by a decision in this.
The question presented by the pleadings arises upon the second count.
This count alleges that, in consideration of sugars sold and delivered on the ninth day of December, 1807, the defendants promised the plaintiffs to pay them two several sums of money, and to deliver to them certain certificates of debenture.
The plea in bar is only an answer to that part of the promise which relates to the delivery of the debentures. It alleges the embargo law of the United States, and relies upon its having excused the defendants from performing this part of their promise.
The replication states, in substance, that, after the passing of the *283 embargo act, and after it was known to the defendants, viz. on the thirty-first day of the same December, they demanded the delivery of the sugars; which was begun on that day, and continued until the sixteenth day of the ensuing January, “ in virtue of the sale as aforesaid, to them made on the said ninth day of December.”
The argument implied by this replication is, that the defendants, having demanded and received the sugars, after they knew of the passing of the embargo act, under the engagement which they had previously made, ought not to be excused from fulfilling that agreement, or from being answerable for the breach of it; and it rests upon this hypothesis, that, although there was a contract for the delivery of the sugars before the embargo, yet that they were not delivered until afterwards. But the count expressly alleges that the sugars were sold and delivered on the ninth of December. The case, then, inevitably implied by the replication, is inconsistent with that affirmed in the declaration; and, of consequence, the replication is a departure. *The question, then, pre- [ * 338 ] seated by the pleadings, is, whether the plea contains a good bar to the demand of the plaintiffs.
The plea alleges that the certificates, which were promised to be delivered, “ were certain certificates, to be granted and issued by the officers of the customs of the United States of America, on the exportation of the said sugars, mentioned in the plaintiffs’ declaration, and that the said certificates could not be obtained unless the said sugars should be exported that they, in a reasonable time, did all things necessary and proper to procure the certificates; but that, after making the promise, and within such reasonable time, the embargo was laid, which rendered it impossible to obtain the certificates of debenture; and that while it so remained impossible the action was commenced.
Every fact, which is pertinent and well pleaded, and not contradicted, must be considered as true. Hence it follows, that by the act of the government it was rendered impossible for the defendants to perform their promise, from the time there was a breach of it, until the commencement of this action. The certificates could only be obtained on the exportation of the sugars purchased. The officers of the customs could not, but upon such exportation, issue the certificates; but before a breach of the promise, it became impossible, in consequence of the embargo, to export the sugars, or procure the certificates. The defendants were, of course, prevented inevitably, and without any fault on their part, from performing their promise.
Now, it is clearly settled, 'by innumerable authorities, that whenever a contract, which was possible and legal at the time it was *284 made, becomes impossible by the act of God, or illegal by an ordinance of the state, the obligation to perform it is discharged; (6) or, if such ordinance be temporary, the obligation is suspended during its continuance. In the case at bar, the contract, at the time it was made, was legal; and before any fault could be [ * 339 ] imputed to the * defendants for the breach of it, a performance became impossible by an act of the legislature. This must excuse them; and it is indifferent whether the act of congress was constitutional, or, as was suggested in the argument, was unconstitutional. It was an ordinance of the state, over which the defendants had no control, whereby it was rendered impossible to perform the contract, (c)
I forbear to conjecture which of the parties, in cases of this sort, have been subjected to the most inconvenience and loss. The plaintiffs have been kept out of their debentures, and prevented from discharging by them their bonds for duties, where such bonds were due; and the defendants have had fixed in their possession large quantities of an article purchased for exportation, and of which probably greatly exceeded the demand for home consumption, and the value of which was of course proportionably diminished. We cannot weigh, and, if we could, it would not be in our power to apportion, the losses which this measure has occasioned, in a greater or less degree, to almost every individual in the community. It is sufficient that we discern a clear and known rule of law, that excuses defendants, in cases circumstanced like the present, for not delivering such debentures during the continuance of the embargo.
Parker, J.,
not having been present at the argument, gave no opinion. The reporter has been authorized to say that Thatcher, J., concurred with the two justices, whose opinions are stated above.
The Chief Justice did not hear the cause, being related by affinity to one of the parties.

Per Curiam.

Judgment for the defendants.

 Doug. 668, Bristow vs. Wright. Note [138.]

Abbott, 408

b) [Sed vide Platt on Cox 587,588. — Ed.1

 3 Burr. 1345.

 1 Rol. Abr. 451.— Co. Lit. 206, a.— Com. Dig. Condition, 14.— W. Jones’s R 179. — Dyer, 28, a. — Plowd. 186. —1 L. Raym. 317, 321. — Salk. 198. —2 Eq. Ca Abr. 26. — Wood’s Inst. 234. — Bac. Abr. Condition, N. — Vin. Abr Condition.

 [Vide Platt on Cov. 587, 568.—Ed.]