Weldon, J.,
delivered the opinion of the court.
The subject-matter of this claim was referred by the Honorable Secretary of the Treasury, in the following communication:
“Treasury Department,
“Office op the Secretary,
“ Washington, D. 0., Febrwwry 9, 1894.
“ The Honorable the Chief Justice

and Judges of the Court of Claims :

“As recommended by the Second Comptroller of the Treasury in his letter of the Gth instant, which is herewith transmitted, I have the honor to refer to your honorable court, pursuant to the provisions of the act of March 3, 1883 (22 Stat. L., 485), the claim of the administrators of the estate of John *48 Satterlee, deceased, for work performed on the Harlem River improvement, New York, under contracts dated August 12, 1889, and March 9,1891, or either of them, or under ‘a certain decision of the Acting Secretary of War, made on or about July 11, 1893,’ and for percentages retained from payments made under said contracts, the Second Comptroller having certified that said claim involves controverted questions of fact and law, and that the decision of the court will furnish a precedent for the future action of the accounting officers.
“All the papers, documents, and proofs pertaining to the claim are herewith transmitted, and the questions of fact and law submitted by the Second Comptroller for your decision are stated as follows:
“First. Whether the sums due and the percentages retained under either or both of the contracts of August 12,1889, and March 9,1891, have at any time become forfeited to the United States; and if so, whether as liquidated damages or as unliqui-dated damages, and in what amount..
“Second. Whether the claimants are indebted to the United States on account of additional expenses incurred by it tor engineering and inspection during the period covered by the several extensions of the contracts of August 12, 1889, and March 9, 1891; and if so, in what amount.
“ Third. Whether the claimants are entitled to recover damages on account of the breaking of either or both of the two dams inclosing the working pit and the consequent filling of the cofferdam with water and submerging the plant used on the work on or about April 21,1893, or any other account; and if so, in what amount.
“ Fourth. Whether under either or both of the contracts of August 12, 1889, and March 9, 1891, the United States is entitled to retain or to recover any amount or amounts as damages on account of the noncompletion of said contract or contracts on or before June 1, 1893; and if so, in what amount.
“ Fifth. Whether the claimants are entitled to recover anything under or by virtue of the indorsement of the Acting Secretary of War dated July 11,1893; and if so, in what amount.
“ Respectfully, yours,
“ W. E. Curtis,
Acting Secretary.”
As stated in the letter of transmittal, this claim comes within the jurisdiction of the court under the second section of the act entitled “ An act to afford assistance and relief to Congress and the Executive Departments in the investigation of claims and demands against the Government,” March 3,1883 (22 Stat. L., p. 485):
“ Sec. 2. That when a claim or matter is pending in any of the Executive Departments which may involve controverted *49 questions of fact or law, tbe bead of sucb Department may transmit the same, with the vouchers, papers, proofs, and documents pertaining thereto, to said court, and the same shall be there proceeded in under such rules as the court may adopt.
“ When the facts and conclusions of law shall have been found, the court shall not enter judgment thereon, but shall report its findings and opinions to the Department by which it was transmitted for its guidance and action.”
The first and fourth questions propounded in the communication embrace substantially the same inquiry, and will be answered together.
As to the second question, the court finds that in consequence of the extension of the time within which the work was completed, made at the instance of the contractor, the increased cost to the United States by the additional expense of engineering and inspection is the sum of $3,383.83, for which the claimants are liable, and is a proper claim for recoupment from money otherwise due the claimants under said agreements.
In answer to the third inquiry, the court determines that the claimants are not entitled to recover damages because of the insufficiency of the dams to withstand the storm of the 21st of April. Neither party can complain as against the other, for the reason that in the adoption of the plans, specifications, and execution of the work they both exercised reasonable care, caution, and judgment, and the result was not due to the fault of either.
The amount of retained percentage is $11,098, which, being diminished by the sum for which claimants are responsible because of the additional costs of engineering and inspection, leaves a balance of $7,714.17. The completion of the work was not physically nor practically impossible, as it was finally completed under another agreement, but at an expense wholly disproportionate to the compensation agreed to be paid the decedent.
The first, fourth, and fifth questions embrace the issue of the controversy as shown by the facts.
The substance of the first inquiry is whether the retained per cent has become forfeited to the United States as liquidated damages. This court has held, in Kennedy's Case (24 C. Cls. R., 123), that “the 10 per cent reserved until completion of work, *50 though declared forfeited by the agreement in the case of an annulment, must be treated as a penalty and not as liquidated damages.” In that case will be found a collection and discussion of the authorities upon the distinction between penalty and .liquidated damages. The 10 per cent being a penalty and not liquidated damages, a failure to perform the contract does not necessarily involve the forfeiture of the retained per cent; but it might be retained by way of recoupment to pay the actual damages to which the party had been subjected because of the failure to perform the agreement.
By the fourth question we are called upon to decide whether the storm of April 21,1893, discharged the claimants from a full and complete performance of the contract, so as to entitle them to recover for the work already performed as represented by the retained per cent; in other words, are the United States entitled to retain the 10 per cent and to recover whatever they may have been damaged beyond that amount because of the failure of the claimants to perform fully their agreements. The facts do not show that the completion of the agreements became physically impossible; but upon the contrary show that the United States did complete the work at a very much increased expense. This case presents the question, whether an increased expense and cost of performance to the extent of fivefold will relieve the claimants from further performance, so as to enable them to recover for the labor actually performed, less the expense of engineering, as shown by finding iv. The fact that the performance of the contract, because of the breaking of the dams became more difficult even to the extent of fivefold did not in the opinion of the court exonerate the claimants from a full and substantial performance of the agreements.
When the performance of a contract becomes impossible by the laws of nature, the party is absolved from his obligation to perform; but if by an intervention of those laws it becomes much more difficult to perform, the condition, because of such intervention, will not justify the party upon whom rests the obligation of performance in refusing to comply with the requirements of the contract. The destruction of the dams and the incident condition of the work were no doubt the result of an “irresistible cause of loss” and if they had made it impossible (in the reasonable view of that term) for the claimants to perform, the law would have discharged them from all liability.
*51 “ It is a settled rule of law that where a party by Ms own contract absolutely engages to do an act, or creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident or other contingency not foreseen by or within the control of the party, unless its performance is rendered impossible by the act of God or of the law or of the obligee.” (Cobb v. Harman, 23 N. Y., 150.) “It must be an impossibility, not difficulty, that will excuse the performance of a contract.” (Huling v. Craig, Addison, R. 516.)
Inconvenience and increased trouble and expense in the performance of an agreement will not exonerate and discharge from duty. (52 Penn. State, 356.)
In the discussion of the grounds on which a party will be relieved from the obligation of his contract, Story says:
“This-rule does not extend to contracts founded upon difficult, improbable, or contingent considerations, for it is the duty of a promisor well to weigh the difficulty or improbability of his consideration before he binds himself to perform it, and the law will not help him to avoid duties which he has deliberately imposed upon himself so long as they are possible.” (Story on Contracts, sec. 463.)
If the law casts a duty upon a party, the performance will be excused if by the act of God it becomes impossible; but if a party engages to do something and fails to provide against, -contingencies the nonperformance is not excused by a contingency not foreseen and which by its consequence increases the cost and difficulty of performance. (Chitty, Contr., 272; 7 Mass., 325; 13 Mass., 94; Chicago R. R. Co. v. Sawyer, 69 Ills., 285; Am. Rep., 613.)
The fifth question presents the most difficult matter of inquiry. We have been much impressed with the very able opinion of the Judge-Advocate-General, in which he holds that the contract made on the 9th day of August, 1893, between Colonel Gillespie and the claimants and approved by the Secretary of War is ultra vires. If that theory of the law be correct the claimants are without legal merit, and the defendants are discharged from all liability to account for any part of the 10 per cent, having paid much more than the amount retained for the completion of the work beyond the price agreed to be paid the decedent. The executive officers of the Government in the discharge of their respective duties deal exclusively with the legal *52 obligations and duties of tbe Government. They are special agents whose authority is limited by law to a discharge of specific duties.
It is insisted by the counsel for the claimants that the contract made on the 9th day of August, 1893, is what it purports to be, “ a final and complete settlement between the parties,” that it was within the power of the Secretary of War to make such settlement, and that as a settlement it is founded upon a sufficient consideration, and is therefore binding on both parties; while the counsel for the defendants insist, that conceding the right to make that kind of an agreement upon the part of the Secretary of War, the agreement is invalid for want of a sufficient consideration upon the part of the defendants. The consideration expressed upon the part of the claimants as moving to the Government was that they should remove from the improved channel their plant; and that the agreement should be a final and complete settlement in regard to all matters pertaining to said contracts. It may be true, as insisted by the defendants, that it was the duty of the claimants to remove the plant by the obligations of the original agreements, and that their agreeing to do so in the contract of August 9,1893, would not constitute a consideration for a new agreement upon the part of the defendants to waive or release any of their rights because of a failure to perform upon the part of claimants.
If we concede the right of the Secretary to compromise or settle the compensation of the claimants upon the failure to fully perform, it is difficult to see upon what theory of law the contract of August 9, 1893, is not conclusive upon the parties. There is no claim or pretense that there was any misrepresentation or fraud, or that either party acted without a full knowledge of all the facts upon which the contract is founded.
In Corliss Company’s Case (91 U. S., 321) the Supreme Court decided “ when the Secretary of the Navy may enter into contracts for the construction, armament, or equipment of a vessel of war, he may suspend the work contracted for if the public interest requires the suspension; he may agree with the contractor for the compensation to be paid for the partial performance of the work. Where a settlement which may lawfully be made between a public officer and a contractor is made upon a full knowledge of all the facts without concealment, *53 misrepresentation, or fraud, it is equally binding upon the Government.”
The facts show, that so far from the officers of the United States declaring a forfeiture of the contract because of the refusal of the claimant to proceed with the work after the storm of April, they tacitly acquiesced in the abandonment in not objecting to the claimants’ failure to proceed. If the further prosecution of the work was abandoned by the act and acquiescence of both parties, and nothing was said at the time as to payment for work already done, the law would presume that for such work payment was to be made. The law abhors forfeitures and will not presume one as against the legal effect of the acts of the parties. A power of forfeiture must be strictly construed. (Williams’s Case, 26 C. Cls. R., 132.) “The case of Croft v. Lumly (6 H. L., 672) rests oh the disinclination of courts to enforce forfeiture and the right of a party paying money to have it applied as he directs.” (Cape Ann Granite Case, 26 C. Cls. R., 1.)
Whatever may have been the rights of claimants under the contracts as applicable to the condition incident to the storm of April, and however much they may have misconstrued the law in their own favor on the question of their right to damages, they believed, from the tenor of their communication to the Secretary of War, that they were entitled to damages against the United States. That claim entered into the consideration which they offered to the defendants in the settlement, and by contract “0” it is assumed to be a consideration moving to the defendants.
Settlements are favored and when made without fraud or misunderstanding become in law the most binding obligations of personal undertaking.
The Supreme Court said in the Corliss Case (91U. S., 322-3):
“There is no allegation or suggestion that the claimant was guilty of any fraud, concealment, or misrepresentation on the subject; but on the contrary it is clear that every fact was known to both parties, and that the whole transaction, as stated by the court below, was unaffected by any taint or infirmity. If such a settlement, as the chief justice of the Court of Claims very justly observes, accompanied by the giving up by one and the taking possession by the other of the property involved, can not be judicially maintained, it would seem that no settlement by any contractor with the Government could be considered as a finality against the Government.
*54 “When a settlement in such, case is made upon a full knowledge of all the facts, without concealment, misrepresentation, or fraud, it must be equally binding upon the Government as upon the contractor. At least such a settlement can not be disregarded by the Government without restoring to the contractor the property surrendered as a condition of its execution.”
In answer to the fifth question it is the opinion and conclusion of the court that claimants are entitled to be paid the sum of $7,714.17.
The findings and opinion will be transmitted to the Treasury Department in accordance with the requirement of the statute.