Davis, J.,
delivered the opinion of the court:
Contracts were made by the parties to this action for the construction of two dry docks — one at Brooklyn, N. Y., the other at Portsmouth, Ya. Both these docks are finished. As to the Virginia dock, no question is presented. At Brooklyn, owing* to an unforeseen difficulty, the completion of the dock was much delayed, and plaintiffs were forced to incur an expense which they had not contemplated when making their bid. This expense, it is now contended, should be borne by the defendants.
The discussion has largely turned upon the force of the word “available,” qualifying the word “site,” as this word appears in the following clause of the specifications:
“These docks shall be located as follows:
“ One at the United States navy-yard, Brooklyn, in the port of New York, and the other at tiie United States navy-yard, Portsmouth, in the port of Norfolk, Ya., upon available sites to be provided by the Government.”
Plaintiff's contend (in substance) that the defendants undertook to furnish information with regard to the site of the dock. This information represented the site as “ available,” and thereupon plaintiffs submitted a proposal for the construction of the dock “upon an available site, to be provided by the Government.” This proposal was accepted and, with the advertisement, became part of the contract. It is urged that plaintiffs were bound only to furnish material and labor necessary to the construction of a dry dock upou an “available site,” and that plaintiffs did not “ warrant the availability of the site. It was agreed that an ‘available site’ should be ‘provided by the Government,’ and that was a consideration of the contract on its part to be performed.”
The findings disclose these facts pertinent to the main point involved in this discussion. A site was selected at the Brooklyn yard which from a seaman’s point of view was useful; soundings were made, which disclosed no especial difficulty in excavation or construction. These soundings were made by the defendants’ engineer and were examined by plaintiffs. Upon the report of defendants’ engineer plaintiffs chose to rely *241 without attempt at further examination for themselves. The discovery of the sand stratum was a surprise to both parties-It may be said, upon the one hand, that plaintiffs had a right to rely upon the Government engineer, and that his examination of the site was so insufficient as to mislead plaintiffs; or it may be said, upon the other hand, that the site being accessible to these experienced dock builders it was their duty to protect themselves by examination prior to contract, failing which they must suffer from the accident of faulty foundation which afterwards developed.
It is contended that this court should re-form the contract because it was entered into under a mistake as to matters of fact. The main facts are that this dock was to be built within the relatively limited area of a navy-yard, upon an “available” site upon the water line; that is, a site “available” in that yard and available primarily for naval purposes, which may be understood to be a site near the water so as to provide short lockage, a site presenting such an entrance as would least be affected by prevailing strong wind and the sharp running tide of the East River, and finally such a site (the other conditions being protected) as would be reasonably near the foundries and workshops of the yard. The availability of a site would mean its usefulness for the purpose intended — that is the primary meaning; secondarily, its adaptability to that purpose. In this case we have a site which upon its surface is absolutely available from the seaman’s and naval constructor’s point of view, also “available” from the contractors’ point of view when they began work and which they discover not to be available only after many days, and then because, to their and everyone’s surprise, a faulty stratum of earth is found some distance below the surface.
We fail to see what there is in the contract to re-form; mutual mistake of fact can not be assumed where there is mutual risk in a matter so uncertain as the substrata of a filled-in soil bordering a great city and a swiftly flowing tidal river.
Under such circumstances one who lets or takes a contract for excavation or construction must (barring deceit) take his own risks, rely upon his own judgment, be responsible to himself. The area of a navy-yard is small, the sites upon its water lines “available” for a dry dock are very limited, so that little room is there for choice; certainly so limited is this choice that *242 the question of the quality of deep layers of soil could hardly have been considered by those who made the contract. They would have thought that “available” meant “available” in the yard; that is, free from buildings, easy of access from the shops, convenient for the workmen; practicable of entrance from the Bast River; that an “available” site is one which is convenient for docking and repairing ships, also economical in yard space, and a site which as little as practicable interferes with the other uses of the yard.
No officer would knowingly select as an “available” site one whose substratum was a quicksand unless absolutely forced by more important considerations to this choice, but in this case there was an error as to the substratum — an innocent error which led to expense, but nevertheless an error against which plaintiffs had the possible protection of a personal examination had they chosen to resort to it. Wb ether that examination would have shown anything different from the Government’s survey we do not know, but plaintiffs showed no desire to make it.
We then have presented this question: The dock is to be built upon an “available” site upon the water front for a certain price; it is to be built upon a site which, from a naval officer’s point of view, is “available” — that is, convenient of access for vessels, convenient in the yard for work upon the vessels; it is, in fact, built upon a site which is “available” in all qualities but this one, that a layer of water-borne sand is found (to the surprise of both parties) by a contractor who chooses to rely upon the honest statement of defendants’ agent as to the substrata of the soil in which the dock is to be dug, and who does not make an investigation for himself, which he might have done.
We fail to see how the character of the soil entered into the contract; no representations were made as to it (for the profile shown in the findings of fact did not amount to a representation upon which plaintiffs might rely); the Government did not guarantee the character of the soil underlying the site, but freely gave plaintiffs what information it had, and the parties-contracted in no way as to the character of the foundation of the site.
This case does not seem to us to differ in principle from that of Ferris (28 C. Cls. R., 332), where the dredging was to be of *243 sand, mud, and gravel, and in tbe process of tbe work large bowlders, amounting to over one-quarter of tbe work, were discovered, greatly increasing tbe contractor’s expense; there we beld “ wben it was ascertained by tbe claimant tbat the materia] contemplated by tbe contract was essentially different from tbe material to be dredged, it ivas bis duty, if be did not wish to proceed with tbe execution of the work, to so notify tbe officer with whom be contracted and get from him, by tbe sanction of tbe proper parties, such changes as could be agreed upon.” No modification or change in tbe contract was made in this case, nor was an application made for extra payment at tbe time tbe work was in progress.
Further, tbe contract and specifications were drawn by plaintiffs, and (following Garrison v. The United States, 7 Wallace, p. 690) “ its doubtful expressions should, therefore, according to a well-known rule, be construed most strongly against tbe party who uses tbe language.”
In fact, plaintiffs completed tbe dock without complaint, rested quiescent upon their rights or wrongs until they began this action, in 1894, upon a contract upon which what defendants supposed was tbe final payment bad been made June 7, 1890. Further, tbe parties engaged in tbe usual form in their contract tbat if the cost of tbe dock was to be increased tbe reason therefor and tbe cost should be put in writing and signed before tbe expense was incurred, which was not done.
Nor is there anything shown by this record upon which can be founded an implied contract binding defendants to pay this unforeseen expense. One of tbe main obj ects of a contract with an expert for a complete structure is tbe avoidance of those extra expenses which will occur when tbe work is undertaken by one untrained in tbe trade, art, or profession. Defendants could have built a dock at Brooklyn using their own engineers, and if deemed advisable and with proper compensation, probably plaintiffs’ patented dock. They elected to employ plaintiffs undoubtedly because of the- advantage to be gained by their acknowledged skill in this their specialty. Defendants contracted for plaintiffs’ skill because of their reputation and experience, and contracted to give them two things — one, a site on the water line available for a dry dock in the Brooklyn yard; the other a certain compensation for the dock. In this contract, or in what occurred after, we find nowhere anything *244 tending to show an agreement, an implied contract, to pay the extra expense which has occurred by reason of the faulty sand stratum.
The natural interpretation of a contract like this is that one of the unwritten considerations is dependence upon the skill of the specialist undertaking the work; one of the dangers apparent at the outset is a faulty substratum, a danger which the Government might anticipate, aud the anticipation of such a. danger would be a fair reason for the employment of a specialist, as the danger is one that such a specialist would in the very nature of his specialty take qiains to provide against; and the chances of such an accident as occurred in this case should be considered by an expert, and would be a proper element of his. bid.
It has been held by this court, where the cost of the work was increased fivefold by reason of the breaking of dams, through freshets, as follows:
“Wien the performance of a contract becomes impossible by the laws of nature, the party is absolved from its obligation to perform; but if by an intervention of those laws it becomes much more difficult to perform, the condition, because of such intervention, will not justify the party upon whom rests the obligation of performance in refusing to comply with the requirements of the contract. The destruction of the dams and the incidental condition of the work were no doubt the-result of an irresistible cause of loss, and if they had made it impossible (in the reasonable view of that term) for the claimants to perform, the law would have discharged them from all liability. (Satterlee, administratrix, v. United States, 30 O. Gis. B., 31.) It is a settled rule of law that where a party by his own contract absolutely engages to do an act, or creates a-duty or charge upon himself, he is bound to make it good, notwithstanding any accident or other contingency not foreseen by or within the control of the party, unless its performance is. rendered impossible by the act of God, or of the law, or of the obligee. (Cobb v. Harmon, 23 N. Y., 150.) It must be an impossibility, not a difficulty, that will excuse the performance of a contract. (Huling v. Craig, Addison, B., 342; see also-52 Penn. St., 356; Story on Contracts, sec. 463; Chi tty on Oont., 272; 7 Mass., 325; 13 Mass., 94; 69 Ill., 285; Am. Bep.,, 613.)”
From this it follows that defendants did not promise, or expect-to pay for a completed dry dock more than they had agreed to pay notwithstanding any accident in the building. There is, *245 do express contract to pay for this expense nor can any contract be implied, for no one supposed this work was 'extra or outside the contract; certainly the defendants did not, for they had contracted for a sum fixed for a dock described, at a spot designated. The plaintiffs in furnishing the labor and materials herein declared upon found no intention or expectancy on the part of the defendants to pay anything in excess of the contract price, therefore no agreement to pay for this additional labor and material can be implied. In fact, the long delay in presenting this account would tend to show that the plaintiffs did not at the time expect the payment here sought. An implied contract is founded upon a presumed agreement, and nothing appears in this record showing an agreement to pay for this increased expense nor any fact from which it can be presumed.
None of the work alleged herein to be extra was ordered by the defendants; neither was any change made iixthe plan. An accident of foundation equally open to the early discovery of both parties and discovered by neither after reasonable endeavor until after the work was well advanced is the only ground for this action.
There can be no recovery. Petition dismissed.