Peelle, J.,
delivered the opinion of the court:
These actions grow out of alleged breaches by the defendants of two separate contracts entered into by them with the claimants, the first of which, dated August 4,1885, was for the excavation of 110,000 cubic yards, more or less, of rock excavation “in the enlargement of the Louisville and Portland Canal” in Kentucky, the work thereunder to be completed on or before December 31,1886.
The second contract, dated January 13,1887, was for the excavation of 124,000 cubic yards, more or less, of earth, and 13,000 cubic yards, more or less, of solid rock excavation, “for enlarging the basin of the Louisville and Portland Canal at the head of the locks,” which work was to be completed bn or before December 31, 1887.
Both contracts were extended, the first twice and the second three times, the last extension of the first contract being to December 31, 1888, and the last of the second contract to December 1,1888.
During the season of 1888, the period of the last extensions, the condition of the Ohio River “was unusual and unprecedented for repeated and continued freshets of high water,” -in consequence of which the working season in the Ohio Eiver at Louisville, Ky., was limited to about thirty-five days, and by reason of which the claimants, without any fault on their part, were prevented from completing the work within the time agreed upon in the contracts as last extended.
At and after the expiration of the contracts so extended, the claimants, through the personal solicitations of their attorneys, *84 applied to the engineer in charge for an allowance of additional time for the completion of the work agreed upon, for the reason that they had been, by freshets, high water, or other force of the elements, and by no fault of their own, prevented from completing the work within the time agreed upon, bnt the engineer officer in charge refused to allow any additional time, basing his refusal on the claimants’ failure to complete the work within the times agreed upon prior to the last extensions.
Before the first contract was entered into, the engineer in charge prepared specifications for the information of bidders, which the claimants examined, and on the faith of which they entered into the contract. These specifications provided, among other things, that their contract would provide‘‘that additional time may be allowed to a contractor for beginning or completing his work in cases of delay from freshets, ice, or other force or violence of the elements, and by no fault of his or their own.”
There was no such provision iu the specifications exhibited for the information of bidders before the second contract was entered into, but both contracts contained the following provision :
“If, in any event, the party of the second part shall delay or fail to commence with the delivery of the material or the performance of the work on the day specified herein, or shall, in the judgment of the engineer in charge, fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of this contract, then, in either case, the party of the first part, or his successor legally appointed, shall have power, with the sanction of the Chief of Engineers, to annul this contract by giving notice in writing to that effect to the party or parties (or either of them) of the-second part, and upon the giving of such notice all money or reserved percentage due or to become due to the party or parties of the second part by reason of this contract shall be and become forfeited to the United States; and the party of the first part shall be thereupon authorized, if an immediate performance of the work or delivery of the material be in his opinion required by the public exigency, to proceed to provide for the same by open purchase or contract, as prescribed in section 3709 of the Revised Statutes of the United States; provided, however, that if the party or parties of the second part shall, by freshets, ice, or other force or violence of the elements, and by no fault of his or their own, be prevented either from commencing or completing the work or delivering the materials at the time agreed upon in this contract, such additional time may in writing be allowed him or them for such commencement *85 or completion as, in the judgment of the party of the first part or his successor, shall be just and reasonable; but such allowance and extension shall in no.manner affect the rights or obligations of the parties under this contract, but the same shall subsist, take effect, aud be enforceable precisely as if the new date for such commencement or completion had been the date originally herein agreed upon.”
By reason of the proviso to the paragraph of the contract just quoted, the claimants contend that, notwithstanding' the extensions theretofore granted, they were entitled, by reason of the delay caused by the freshets aforesaid, to an allowance of additional time within which to complete the work agreed upon in the contract last extended, and that the refusal of the engineer officer in charge to allow additional time was a breach of the contracts on the part of the defendants, resulting in great damage to the claimants in the loss of profits which would have accrued to them had such additional time been allowed.
The defendants contend that, in the absence of fraud, actual or constructive, the decision of the engineer officer in charge in refusing an extension of time for the completion of the work under the contract is final and conclusive and can not be reviewed by this court.
As to whether the extensions or allowances of additional time prior to December, 1888, were or were not granted on sufficient grounds, we are not called upon to decido. Nor is it necessary for us to consider the question as to -whether the defendants’ officers had the right, except in the manner provided by Bevised Statutes, section 3709, to impose new conditions as the basis of an extension, as appears to have been done in the case of the first contract.'
Both parties treat the extensions as having been made on sufficient grounds, and once consummated, the contract provides that “ such allowance and extension shall in no manner affect the rights or obligations of the parties under this contract, but the same shall subsist, take effect, and be enforceable precisely as if the new date for such commencement or completion had been the date originally herein agreed upon.”
So that, for the purpose of these cases, we have only to do with the contracts as last extended; and in this respect we will consider the several dates for the completion of the work in December, 1888, as though they were the dates originally' agreed upon in the contracts.
*86 Whatever delays or defaults on the part of the claimants . may have occurred prior to the last extensions of the contracts were waived by the defendants when the extensions thereof were granted; no forfeitures were declared at the time, and by the several extensions were waived, and once waived, can not be revived. (Pigeon’s Case, 27 C. Cls. R., 167, 176.) So that the delay or diligence of the claimants in respect of the prosecution of the work could only be looked to by the officer in charge during the period of the last extensions.
In support of their contention the defendants have cited and rely upon a line of cases wherein it has been held in substance that “ in the absence of fraud or such gross error as would imply bad faith” the decision of the engineer officer in charge in respect of quality and quantity of materials furnished and work done, or in any other matter wherein the parties have so agreed in the contract, shall be final.
In the case of Kihlberg v. United States (97 U. S., 398) a contract was made for the transportation of stores and supplies between certain points, providing that the distance should be “ ascertained and fixed by the.chief quartermaster.” The distance was ascertained and fixed, but the same was less than by air line or the customary route, and for that reason objected to by the contractors; but the court held in substance (there being no fraud or gross error or failure to exercise an honest judgment) that the distance so fixed was final and conclusive, as the parties to the contract had agreed thereto.
This case was followed by the case of Sweeny v. United States (109 U. S., 618). In the latter ease the contract imovided that payments should not be made until some officer designated by the Government should certify that the wall constructed “was in all respects as contracted for.” The officer so designated expressly refused to give such certificate on the ground that “neither the material nor the workmanship were such as the contract required.” The court held that in the absence of fraud or gross error the certificate was a condition precedent to payment.
That case was followed by The Martinsburg, etc., Co., v. March (114 U. S., 549), wherein the contract provided that the company’s engineer should in all cases determine questions relating to the execution thereof, both as to the quantity of the several kinds'of material and the compensation earned by the contractor, and that the same should be final and conclusive, and *87 so tbe court held. Other like cases in principle are, Chicago, etc., Railroad Company v. Price (138 U. S., 185); Kennedy v. United States (24 C. Cls. R., 139); Ogden v. United States (60 Fed. Rep., 725); Elliott v. Railroad Co. (74 Fed. Rep., 707, 711); Gilmore v. Courtney (158 Ill., 432, 437).
The decisions cited, and upon which the defendants rely, grew out of the construction of contracts wherein the parties thereto, in terms,, agreed, in respect of the subject-matter thereof, that the decision of the officers therein named should be final and conclusive, or should determine the question involved, as in the cases respectively stated.
In the case at bar a provision in the contract provides:
“All materials furnished and work done under this contract shall, before being accepted, be subject to a rigid inspection by an inspector appointed on the part of the Government, and such as do not conform to the specifications set forth in this contract shall be rejected. The decision of the engineer officer in charge as to the quality and quantity shall be final.”
By that provision of the contract the parties, in terms, agreed that the decision of the engineer office in charge “as to quality and quantity shall be final,” so that a contractor entering into such a contract could not, “in the absence of fraud or such gross error as would imply bad faith,” be heard to complain of such decision, and in effect such are all the decisions cited.
But in respect of the provision of the contracts in the cases at bar, where no additional time whatever was allowed, we are clear that those decisions do not apply.
Had the engineer officer in charge exercised his judgment in the allowance of some additional time, though inadequate, a different question would be presented; but when he failed to exercise his judgment in this respect, by refusing to allow any additional time, he did so in the face of conditions disclosed by his own reports or those of his subordinates, set forth in finding vii, which entitled the claimants, if the provision means anything, to additional time.
The engineer in charge was, by the first provision of the paragraph of the contract quoted, made the judge as to whether the claimants had faithfully and diligently prosecuted the work “in accordance with the specifications and requirements of the contract;” and if in his judgment they had not so prosecuted the work, the defendants were by the terms of the contract given the “power, with the sanction of the Chief of Engineers, to annul” the contract in the manner therein provided. To *88 Ibis the claimants had agreed, and the engineer’s decision therein would have been final.
But if the claimants were, “by freshets, ice, or other force or violence of the elements,” and by no fault of their own, prevented from completing the work at the time therein agreed upon, the judgment of the engineer officer in charge was to be exercised, not in the annulment of the contract therefor, but in the allowance of such additional time as in his judgment “ shall be just and reasonable.”
If one enters into a contract possible of performance and such performance be prevented by the act of God, it is well settled that no breach can be assigned therefor, although no referen cebe made thereto in the contract. (McDermott v. Jones, 2 Wall., 1,7; Satterlee, administrator, etc., v. The United States, 30 C. Cls. r., 31, 50, and authorities there cited; Cobb v. Harman, 23 N. Y., 150.)
In the cases at bar, however, the contracts in terms provide that “additional time may in writing be allowed” for the completion of the work if prevented therefrom “by freshets, ice, or other force or violence of the elements,” and by no fault of their own; not that such additional time may or may not be allowed as the engineer in charge may determine, but that “such additional time may in writing be allowed” as in his judgment “shall be just and reasonable.”
The language taken together leaves no discretion in the officer except in respect of the additional time to be allowed, and even that, the contract provides, “shall be just and reasonable.”
The claimants in effect agreed that no additional time should be allowed them except on condition that they were prevented from the completion of the work (1) “by freshets, ice, or other force or violence of the elements,” and (2) by no fault of their own; and to hold, when those conditions are present, that it is within the discretion of the engineer in charge to say whether any or no additional time may be allowed would be to eliminate that mutuality essential in conscionable contracts.
Hence, taking into consideration the circumstances of this case, and to effectuate the intention of the parties gathered from the contracts as a whole, we must hold that the word “may” should be construed to mean “ shall.”
As to what additional time would be just and reasonable he, as the engineer officer in charge, was to determine, not by the *89 exercise of arbitrary power, but by tbe exercise of a just and reasonable judgment; and any additional time thus allowed would have been final.
To this the parties to the contract had agreed, and the claimants were therefore entitled to have the engineer officer exercise bis judgment in this respect. (Crane Elevator Co. v. Clark, 80 Fed. Rep., 705, 708.)
True, as the officer and agent of the defendants he was bound, as between himself and his principal, to fairness and good faith (Hume v. United States, 132 U. S., 106), but that did not deprive him of the right, but rather enjoined upon him the duty under the contract, of dealing justly and fairly with the claimants, as by the terms of the contracts whatever additional time he allowed was to be equally binding on the defendants; and in this respect the officer was the arbitrator to whom the question was referred by the parties .to the contracts, and by whose decision, in the absence of fraud, they mutually agreed to be bound (Gordon v. United States, 7 Wall., 188, 194); but he was not made an arbitrator to annul or terminate the contracts on the grounds made the basis for an allowance of additional time; nor on the ground of delinquencies in previous years; as the extended contracts were, in respect of their several dates, new contracts, the performance or nonperformance of which did not depend upon anything done or omitted to be done thereunder prior to the last extensions.
Notwithstanding this, the engineer in charge annulled the contracts on the grounds of delinquencies in previous years as before stated. The claimants had made no agreement to this effect, and it is only by the mutual assent of the parties that a contract can be modified or annulled. (Utley v. Donaldson, 94 U. S., 29; Wheeler v. New Brunswick Co., 115 U. S., 29.)
The engineer officer having himself or through his subordinates reported from month to month during the period of the last extension of the contracts, as set forth in the findings, that the claimants had, by reason of freshets and high water, been prevented from completing the work at the time therein agreed upon, thereby conceded that the condition or events provided against in the contracts and made the grounds or basis for an allowance of additional time had occurred, and in the absence of fraud or gross error, not contended in these cases, was binding on the defendants and not open to dispute.
In the construction of contracts courts consider not only the *90 language employed, but the subject-matter and the surrounding circumstances, and thereby avail themselves of the light which the parties possessed when the contract was entered into. Merriam v. United States (107 U. S., 437); United States v. Gibbons (109 U. S., 200); Mobile & M. R. Co. v. Jurey (111 U. S., 584).
And courts apply the same rules of construction to contracts made by the United States as to those between individuals (United States v. Smoot, 15 Wall., 36), and they are liable in damages for a breach of their contract on the same principles and to the same extent as a private party. (Chicago R. R. Co. v. United States, 104 U. S., 680, 685; United States v. Smith, 94 U. S., 214.)
In thus viewing the contracts we find that the excavation to-be done thereunder was of earth and rock in the bed of the Ohio Eiver exposed to great force of the river in times of freshets and high water, the performance of which work ueces- • sitated the expenditure of large sums of money both in the preparation for and in the prosecution of the work, and it was doubtless because of these foreseen probable difficulties that provision was made in the contracts for additional time in case the claimants should, “ by freshets, ice, or other force or violence of the elements,” be prevented either from commencing or completing the work at the time therein agreed upon.
This, it seems to us, was the manifest intention of the parties by the words used, and to give effect thereto is the controlling consideration in the construction of contracts. (Canal Co. v. Hill, 15 Wall., 94, 103.)
The whole contract is to be considered, the purpose of it, the subject matter, and the surrounding circumstances, and each part so construed with the others that all may be given effect if possible.
Thus viewing the contract and the specifications made part thereof, we are of the opinion that the refusal of the engineer officer in charge to allow such additional time as, in his judgment, was “just and reasonable” constituted a breach of the contracts on the part of the defendants, resulting, as the claimants contend, in the loss of profits which they would have realized as the fruits thereof had they been permitted to complete the work thereunder.
This brings us to the question as to whether the damages thus sustained are recoverable — i. e., Are they the natural and proximate consequence of the breach?
*91 On tbis point we think there can be no controversy, for by the annulment of the contract the claimants were compelled to ■cease the work of excavation thereunder; and while this of itself resulted, as the findings show, to their benefit in preventing them loss on the work of excavation, it also resulted in depriving them of the material which, by the terms of the contract and as part of the consideration therefor, became their property when excavated.
“If the outlay equals or exceeds the amount to be received, of course there can be no profits.” (United States v. Behan, 110 U. S., 338, 315.) But if the amount to be received exceeds the outlay, then the difference, making reasonable deductions within the rule next stated, will be the amount of profits recoverable.
The ordinary rule for the measure of damages in such cases is “the difference between the cost of doing the work and what the claimants were to receive forit, making reasonable deductions for the less time-engaged and for release from the care, trouble, risk, and responsibility attending a full execution of the contract.” (United States v. Speed, 8 Wall., 77, 84; Masterson v. Mayor of Brooklyn, 7 Hill, 69.)
The latter, the court in the preceding case says, is the leading one on the subject.
In the case of United States v. Behan (110 U. S., 338, 344), where a contract was made for the improvement in the harbor at New Orleans, and the contractor was, without any fault on his part, prevented from performing the contract, the court stated the rule for the measure of damages thus:
“ The prima facie measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it; the loss of the latter will consist of two distinct items or grounds of damage, namely: First, what he has already expended toward performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract. The second item, profits, can not always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. But when, in the language of Chief Justice Nelson, in the case of Masterson v. Mayor of Brooklyn (7 Hill, 69), they are ‘ the direct and immediate fruits of the contract,’they are free from this objection; they are then ‘part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment *92 of which is just as clear and plain as to the fulfillment of any other stipulation.’ * * *
“When a party injured by the stoppage of a contract elects to rescind it, then, it is true, he can not recover any damages for a breach of the contract, either for outlay or for loss of profits; he recovers the value of his services actually performed as upon a quantum meruit. There is then no question of losses or profits. But when he elects to go for damages for the breach of the contract, the first and most obvious damage to be shown is the amount which he has been induced to expend on the faith of the contract, including a. fair allowance for his own time and services. If he chooses to go further, and claims for the loss of anticipated profits, he may do so, subject to the rules of law as to the character of profits which may be thus claimed.”
Under the contract in the first case at bar, however, there is an element of damage which arises under the second specification, made part of the contract, and set out in finding xiv, which reads:
“All material excavated under this contract will be the property of the contractor, and must be disposed of in such a manner as not to interfere with navigation, of which the engineer in charge shall be the judge. The contractor is forbidden to deposit any excavated material on canal property without permission.”
Under that provision the claimants contend that they are entitled (1) to the increase in the cubic contents of the rock by crushing and (2) to the reasonable profit thereon at the place of delivery.
In legal effect the material excavated became a part of the consideration therefor, and the claimants being prevented from the completion of the work without any fault on their part thereby suffered the loss of the profits they would have made on such excavated material had they been permitted to complete the work under the contract as last extended.
That such loss resulted from the natural and proximate consequence of the breach we think there can be no question, and the claimants are therefore entitled to recover damages therefor measured by the rules stated.
The cubic conten! s of the excavated material, the findings show, would have increased by crushing one-half, i. e., 1 cubic yard of material as excavated would make by crushing 1-J cubic yards of broken stone; and that when so crushed was a valuable commodity for which there was a ready market in Louisville, Ky., at $1.25 per cubic yard.
*93 The cost of crushing the excavated material and delivering the same in the market at Louisville would have been 50 cents per cubic yard of the crushed material, leaving as the claimants’ net profit thereon 75 cents per cubic yard.
The specifications providing that “all material excavated under this contract will be the property of the contractor” no doubt influenced the claimants in making the bid of 85 cents per cubic yard for such excavation, as otherwise they would have lost on the contract, as the findings show, 40 cents per cubic yard, or $33,400.
The claimants having made their bid and entered into the contract on the faith of the specifications, we think they are entitled to i ecover the profits which would have accrued to them on the excavated and crushed material had they been permitted to complete the work, less the amount they would have lost on the work of excavation, leaving as their net profit thereon the sum of $60,537.50.
Under the second contract the claimants’ bid for rock excavation was $1.05 per cubic yard, and the rock to be excavated was slate, or of a slaty character, and could, as the findings show, have been excavated for 75 cents' per cubic yard.
As to the amount of $2,827.50 in finding xxiv, being the difference between the cost of completing the excavation and what the claimants were to receive therefor under their contract in case No. 17783, we think that comes clearly within the authorities cited, and the same is allowed.
As to the retained percentage in both cases, amounting to $5,412.99, as set forth in findings xi and xxiii, the defendants concede that under the decisions in the cases of Van Buren v. Diggs (11 How., 461, 477); Pidgeon v. United States (27 C. Cls. R., 167); Satterlee v. United States (30 C. Cls. R., 31, 50), and Kennedy v. United States (24 C. Cls. R., 122), the claimants are entitled to recover.
In the latter case the court said: “ The 10 per cent reserved until the completion of the work, though declared forfeited by the agreement in case of its annulment, must be treated as a penalty and not as liquidated damages.”
That case was ruled by the decision in the case of Van Buren v. Diggs (supra), in which the court said: “ The clause of the contract providing for the forfeiture of 10 per centum of the amount of the contract price upon a failure to complete the work by a given day can not be properly regarded as an *94 agreement or settlement of liquidated damages. The term forfeiture imports a penalty; it bas no necessary or natural connection with the measure or degree of injury which may result from a breach of contract or from an imperfect performance. It implies an absolute infliction, regardless of the nature or extent of the causes by which it is superinduced.”
“ Unless, therefore, it shall have been expressly adopted and declared by the parties to be a measure of injury or compensation, it is never taken as such by courts of justice, who leave it to be enforced, where this can be done, in its real character, viz, that of penalty.”
As there was no such agreements or declarations by the parties in either contract, the 10 per centum retained must be treated as a penalty; and as the defendants are not claiming damages for the claimants’ failure to complete the work under the contract, there can be no retention by way of recoupment, and hence they are entitled to recover therefor.
The total amount recoverable in both cases, as stated in the • last conclusion of law, is $68,777.99, for which judgment will be entered.