Bollenbacher *et al. v.* The First National Bank of Bloomington *et al.*

Filed Nov. 3, 1893.

———————◆———————

No. 1,136.

## BOLLENBACHER ET AL. *v.* THE FIRST NATIONAL BANK OF BLOOMINGTON ET AL.

PARTNERSHIP.—*Surviving Partners.—Continuing Partnership Business. —Trustee and Cestui Que Trust.—Insurance.—Receiver.—Assets.*— When a member of a partnership dies, the surviving partners hold the property and money of the partnership in trust for the partnership creditors; and where the surviving partners continue the business of the partnership in another firm-name, and insure the property in such name, and pay the premiums thereon, any money realized on the insurance policy, as well as all other funds of the partnership, belong to the *cestui que* trust, and primarily to the creditors of the firm; and, in such case, a receiver having been appointed, he is entitled to the possession and control of all the firm assets, including insurance money obtained by the surviving partners on a policy procured by them, and including profits realized in the continuance of the partnership business.

From the Monroe Circuit Court.

*J. R. East, R. A. Fulk* and *E. Corr,* for appellants.

*J. H. Louden, W. P. Rogers* and *P. K. Buskirk,* for appellees.

DAVIS, J.—The special finding of facts is substantially as follows:

1st. That on the 17th of September, 1885, there was

a firm in Bloomington, known by the name of Bollenbacher & Sons, and consisting of George Bollenbacher, Sr., George W., Martin C., and William P. Bollenbacher; that on said 17th of September, 1885, said George Bollenbacher, Sr., died testate; that, by the terms of his will, his sons, other than George W., were to have all of said decedent's interest in the said firm, consisting of real and personal property.

2d. That the firm of Bollenbacher & Sons had been in existence since 1881, engaged in the manufacture of spokes.

3d. That at the time of the death of George Bollenbacher, Sr., said firm was indebted to the First National Bank of Bloomington in the sum of $17,500; that a great part of said indebtedness still continued until the application of the sum of money described in plaintiff's complaint, and that said firm is still indebted to said bank.

4th. That upon the death of George Bollenbacher, Sr., in September, 1885, the firm of "Bollenbacher's Sons" was organized; that said firm was composed of George W., William P., Martin C., Samuel, and Jacob I. Bollenbacher, all sons of George Bollenbacher, Sr., and all members of the old firm, except Samuel and Jacob I.

5th. That all the interest that William P., Martin C., Samuel, and Jacob Bollenbacher had in the firm of Bollenbacher's Sons was the interest owned by George Bollenbacher, Sr., at the time of his death, in the firm of Bollenbacher & Sons, except what interest William P. and Martin C. had in the firm of Bollenbacher & Sons.

6th. That all the capital, property and stock and choses in action that the firm of Bollenbacher's Sons had at the time of its organization in September, 1885, was the capital, property and stock and choses in action of the firm of Bollenbacher & Sons, as it existed at the time

of the death of George Bollenbacher, Sr.; that the same was worth the sum of $15,000.

7th. That the firm of Bollenbacher's Sons continued the business of manufacturing spokes, from September, 1885, until 1888, since which time it has done no business with any one.

8th. That in December, 1888, said firm of Bollenbacher's Sons had deposited to its credit in the First National Bank of Bloomington the sum of $1,573.09, and that said sum has never been paid over to said firm by said bank.

9th. That on the 4th day of April, 1887, the factory that belonged to the firm of Bollenbacher & Sons was burned down and destroyed; that there was a policy of insurance on said building and contents in the name of Bollenbacher's Sons; that said policy was put on said building and contents by the said firm of Bollenbacher's Sons, and they paid the premium on said policy.

10th. That said policy amounted to the sum of $4,-000, and that it was collected by the said firm of Bollenbacher's Sons and deposited in the First National Bank of Bloomington to their credit, and that in September, 1888, $300 of this same insurance money still remained in said bank.

11th. That on the 28th of September, 1885, there was deposited in the First National Bank of Bloomington, to the credit of the firm of Bollenbacher & Sons, the sum of $1,493.28, and that this sum of money was on that day transferred from the account of Bollenbacher & Sons to the credit of Bollenbacher's Sons, and that said money was so transferred at the instance and request of the firm of Bollenbacher's Sons, and that from that time continuously the moneys of the firms of Bollenbacher & Sons and Bollenbacher's Sons were commingled.

12th. That the outstanding indebtedness of the firm

of Bollenbacher & Sons was never all paid; that at the time the firm of Bollenbacher's Sons quit business in 1888, the firm of Bollenbacher & Sons still owed the First National Bank of Bloomington $10,000, with interest thereon.

13th. That a mortgage for $8,000 on the spoke factory and machinery and stock of the firm of Bollenbacher & Sons, to the said bank, was paid off by the firm of Bollenbacher's Sons, and that a large portion of the insurance money was used by said firm to pay said mortgage indebtedness.

14th. That the affairs of the firm of Bollenbacher & Sons have never been settled by any one, but that one Charles McPheeters has been duly appointed receiver of and for said firm.

15th. That before the filing of this suit, one John R. East, as attorney of the plaintiffs, during banking hours, and at the place of banking of the First National Bank of Bloomington, made a demand and presented a check duly signed "Bollenbacher's Sons," for the sum of $1,573.09, to the cashier of said bank, and demanded payment of the same, but that payment of said check was refused.

16th. That on the 15th day of November, 1888, Charles McPheeters, receiver of the firm of Bollenbacher & Sons, checked out of the said First National Bank of Bloomington the sum of $1,573.09 that was credited in said bank to the firm of Bollenbacher's Sons, and applied the same on the indebtedness of Bollenbacher & Sons to said bank.

As a conclusion of law the court found for appellees.

The only error discussed is that the court erred in its conclusion of law on the special finding of facts.

Counsel for appellants contend that "the firm of Bollenbacher's Sons had an insurable interest in the prop-

erty formerly owned by Bollenbacher & Sons, which was insured by Bollenbacher's Sons,'' and, therefore, ''the money derived on the policy belonged to Bollenbacher's Sons,—amounting to $4,000,—and the $1,575 in bank ought to have been paid to them.''

This contention is based on the general proposition that a partner has an insurable interest to the amount of the value of the entire partnership property.    It may be conceded that, ordinarily, an insurance by one partner in his own name, on partnership property, does not inure to the benefit of the partnership, but the question is whether the rule on which appellants rely is applicable to the facts in this case.

It should be borne in mind that there was a commingling of the funds of the two firms, and that only $300 of the insurance money is included in the amount in controversy.

In this connection, we quote the following from the brief of counsel for appellees:

''On the death of George Bollenbacher, Sr., in September, 1885, the law invested the surviving partners with the exclusive right of possession and management of the entire property of the partnership, for the purpose of settling up the business of the firm and paying off the debts.    They were trustees primarily for the creditors of the firm.    Accordingly, it has been correctly laid down that 'the surviving partners are held strictly as trustees. *   *   *    Their trust is to wind up the concern in the best manner for all interested, and, therefore, without unnecessary delay.'    *Valentine* v. *Wysor,* 123 Ind. 47; Parsons Part., p. 442; *Jones* v. *Dexter,* 130 Mass. 380; *Holland* v. *Fuller,* 13 Ind. 195.

''The surviving partners had no right to use the property of the firm for any other purpose than to convert the same into money in the best manner possible.    It was

a trust property, and to make use of it was a violation of the trust.    This is true, not only as to the money and choses in action, but also as to the real and personal property of the firm.

"In White and Tudor's Leading Cases in Equity, vol. 1, part 1, p. 303, the law is stated thus:    'On the other hand, the surviving partner, though he may be clothed with the whole legal title, has no right or power to divert the trust property to his own private uses, in derogation of the rights of the creditors of the firm.'

"The Supreme Court of Arkansas, in *Cline* v. *Wilson*, 26 Ark. 154, say:    'A surviving partner has a right to the possession and control of the partnership property for the purpose of settling and closing up the business, and not for the purpose of carrying it on.'

"The Supreme Court of New York, in *Skidmore* v. *Collier*, 15 N. Y. 50, says:    'A surviving partner, though he has a legal right to the partnership effects, yet, in equity, is considered merely as a trustee to pay the partnership debts, and to dispose of the effects of the concern for the benefit of himself and the estate of his deceased partner.    If he continues the partnership business with the partnership funds, he is, as a general rule, liable to account for all profits made thereby, and the losses, if any, must be borne by himself.'

"Bispham, in his Principles of Equity, section 514, says:    'In taking the partnership accounts, a surviving partner will be regarded as a trustee, and will be ordinarily responsible for any profits which he may have made after the dissolution.'

\*        \*        \*        \*        \*        \*

"The facts show that the surviving partners, on the 17th day of September, 1885, took possession of the partnership property of Bollenbacher & Sons, valued at $15,-

000, and $1,493.28 in money, and used the same in violation of their trust, for their own benefit. The fact that Samuel and Jacob I. Bollenbacher were in the concern with them, can make no difference. They paid nothing and had no interest in the firm, unless something was left after paying off the indebtedness of Bollenbacher & Sons. The rights of the heirs or legatees of a deceased partner are subject to the adjustment of all claims, and attach only to the surplus which remains when the partnership debts are paid. Until all the debts are paid, the rights of the heirs do not attach. *Grissom* v. *Moore,* 106 Ind. 296; *Valentine* v. *Wysor, supra; Walling* v. *Burgess,* 122 Ind. 299; *Deeter* v. *Sellers,* 102 Ind. 458.

"Under what name the surviving partners did business, can make no difference. They may call themselves Bollenbacher's Sons, or Bollenbacher's Surviving Partners, or Bollenbacher's Trustees, or whatever other name may strike their fancy, they were trustees of the property for the benefit of the creditors, and all the money they made from the use of the property belonged to the trust estate, until the indebtedness was adjusted and paid off. A trustee can not make any profit at the expense of a trust estate." See, also, *Brackenridge, Admr.,* v. *Holland,* 2 Blackf. 377 (382).

In our opinion, on the facts found and under the authorities cited, the persons composing the firm of Bollenbacher's Sons should be regarded as holding the property and money in trust for the partnership,—and primarily for the creditors,—of Bollenbacher & Sons. Lindley on Partnership (Ewell), 664, and notes; Pomeroy's Equity Jurisprudence, section 1046.

The insurance money, as well as the other funds in controversy, belonged to the *cestui que trust.* Sections 487, 553, Perry on Trusts.

On the appointment of the receiver he became at once

entitled to the possession and control of all the firm assets, including the money in controversy, to the exclusion of the members of the partnership. High on Receivers, sections 538, 541.

Whether the receiver had the right to pay the money to the bank, or whether the bank had the right to apply the money on deposit in payment of the indebtedness, under the rule enunciated in *Bedford Bank* v. *Acoam*, 125 Ind. 584, we need not determine. If appellants recover, it must be on the strength of their own right. The burden was on them. It was incumbent on appellants to show that they were entitled to the money.

If we are right in our conclusion that Bollenbacher's Sons were trustees primarily for the creditors of Bollenbacher & Sons and that the receiver, under the supervision of the proper court, was entitled to the possession and control of the money, then it necessarily follows that there is no available error of which appellants can complain in the judgment of the court below.

Judgment affirmed.

Filed Nov. 10, 1893.