Webster v. Major.

---

## WEBSTER ET AL. v. MAJOR.

[No. 4,443.    Filed May 24, 1904.]

APPEAL AND ERROR.—*Briefs.*—*Court Rules.*—A statement in a brief, in reference to the action of the trial court in overruling a demurrer to certain paragraphs of answers, that such "answers amount to an argumentative denial, and an attempt to set up facts which are at variance with the written contract filed with, and made a part of, the complaint," is not such a compliance with subdivision five of rule twenty-two of the Appellate Court requiring a concise statement of so much of the record as fully presents every error and exception relied upon, referring to the pages and lines of the transcript, as entitles appellant to a consideration of such answers.    *pp. 204, 205.*

VENDOR AND PURCHASER.—*Sales.*—*Partnership.*—*Death of Partner.*—*Contract of Surviving Partner.*—*Receivers.*—Defendant entered into an agreement to convey by deed his one-third interest in a certain sanitarium and grounds owned by a firm of three members, one of whom died prior to the execution of the agreement.   By the terms of the agreement plaintiff was to pay, and did pay, to defendant a certain amount in cash and assume certain liens created by defendant.   Plaintiff took possession of the property and with the other partner and the heirs of the deceased partner made certain improvements, and thereafter, upon application of the heirs of the deceased partner, a receiver was appointed for the partnership, and the property was sold and the proceeds applied to the payment of the debts of the old firm and the new.   *Held,* that defendant was, by the divestment of the title to the real estate and the dissipation of the partnership assets of the firm by the judicial sale, relieved from his contract.   *pp. 205–218.*

From Putnam Circuit Court; *P. O. Colliver,* Judge.

Suit by Ellery C. Webster and another against Sylvanus Major.   From a judgment for defendant, plaintiffs appeal.   *Affirmed.*

*C. G. Renner, J. C. McNutt, Pierce Norton, E. G. Ho-*

gate, *J. L. Clark, G. C. Moore* and *T. T. Moore,* for appellants.

*W. E. McCord, S. A. Hays* and *Willis Hickam,* for appellee.

WILEY, P. J.—Appellants, who were plaintiffs below, sued appellee upon a written contract, casting their complaint in one paragraph. The appellee answered in four paragraphs, to the second, third, and fourth of which a demurrer was overruled. Appellants replied in one paragraph. Trial by jury, and upon the completion of the evidence the appellee interposed a motion that the court instruct the jury to return a verdict in his favor. This motion was sustained. Appellants thereupon moved for a new trial, which motion was overruled. The errors assigned bring in review the overruling of the demurrer to the second, third, and fourth paragraphs of answer, to the action of the court in directing a verdict for the defendant, and overruling appellants' motion for a new trial.

Appellants' action was based upon a written contract by which the appellee bound himself to convey by deed to appellants a certain interest which he held or owned in designated property in Martinsville, Indiana. By that contract the appellee sold to appellants his undivided one-third interest in the Nutter-Major Sanitarium, situated on the north half of out block No. 37 in the original plat of the city of Martinsville, for and in consideration of the sum of $8,000. The contract shows that, on the day of its execution, appellants paid appellee $3,000 in cash, and executed their promissory notes for the sums of $1,200 and $1,164, due, respectively, in one and two years from date, bearing eight per cent. interest. Contract also shows that the appellants assumed, as balance of said purchase price, the payment of one-third of a mortgage on the said property executed by said appellee and Isaac W. and Emily J. Nutter and Albert H. Nutter to the Home Building Association of Martinsville; said one-third being the amount of $2,636.

Said contract further specifies that said Nutter-Major Sanitarium Company then owned the northwest quarter of said out-lot, and had and held an option to purchase from Sarah Nutter the remainder of said out-lot lying west of the Indianapolis & Vincennes railroad, which said option was also sold to appellants, they assuming the payment of the same. The contract also provides that the appellants were to keep up the payment of dues, premiums, and interest payable to said building association on said loan, and the insurance carried on said buildings, after the payment of said mortgage, was to be held as security by appellee for the balance of the purchase price, to wit, said two notes. Contract also further provided that appellants were to pay the taxes on said property after said date, and also the annual rental due to Sarah Nutter for the use of said land owned by her, and used by said sanitarium. The contract also bound appellants to carry $12,500 of insurance on said buildings for the benefit of said Home Building Association, and for security for the unpaid purchase price remaining due to appellee, and, upon their failure so to do, appellee was authorized to take out insurance policies to said amount, and that the amount paid therefor by him should become a part of the debt due to him, and to bear interest at the rate of eight per cent. The contract made it obligatory upon appellee, upon the payment of the balance of the purchase price, to convey to said Webster and Webster, by deed, all his interest in said sanitarium and said grounds, free from liens executed by him, except the said building association loan, which appellants assumed. By the contract, also, appellants assumed all the rights and liabilities of appellee in a certain suit pending in the Morgan Circuit Court between Nutter-Major et al. and Hendricks, Kissenger, and Holtom, and to pay costs and fees chargeable to appellee in prosecuting the same.

Under a strict construction of rule twenty-two, appellants are not entitled to have considered the action of the

court in overruling their demurrer to the second, third, and fourth paragraphs of answer. Under subdivision five of rule twenty-two, *supra,* the appellant is required to give in his brief a concise statement of so much of the record as fully presents every error and exception relied upon, referring to the pages and lines of the transcript. By referring to the record we find that the second, third, and fourth paragraphs of answer are of extreme length, and appellants have wholly failed to embrace in their brief a concise statement of what these answers allege. In their brief counsel for appellants say: "These answers amount to an argumentative denial, and an attempt to set up facts which are at variance with the written contract filed with, and made a part of, the complaint. The general denial being already pleaded by the first paragraph of appellee's answer, and parol evidence being inadmissible to favor the written contract, appellants' demurrers to these paragraphs of answer should have been sustained." Such reference to these paragraphs of answer is not a compliance with the rule cited, and if, as counsel say, they only amount to an argumentative denial, there was no error in overruling the demurrers to them. For these reasons we decline to consider further the sufficiency of the answers. All other questions under the assignment may be considered together, as they involve the action of the court in directing a verdict for appellee.

A proper determination of the question requires a statement of the facts disclosed by the evidence. The evidence is without conflict, and discloses the following material facts: That, prior to the contract sued on, Albert H. Nutter and Isaac W. and Emily J. Nutter (the latter two being husband and wife) and appellee formed a partnership for the purpose of erecting and operating a sanitarium at Martinsville, Indiana. The firm was known as the Nutter-Major Sanitarium Company, and owned in fee simple the northwest quarter of out-lot No. 37 in Martins-

ville.    It had leased and had an option to purchase certain real estate which was being used in connection with the sanitarium.    Said firm was making extensive improvements on the property, when, on January 22, 1896, Albert H. Nutter, one of the partners, died intestate, and left as his only heirs his widow and three children, the children being all minors.    Appellee was appointed administrator of his estate, and the widow was appointed guardian of his children.    The widow and the surviving partners continued to build and equip the sanitarium, without any settlement of the partnership business, and the improvements, etc., were completed in May following.    Upon the execution of the contract sued on, appellants, together with Isaac W. and Emily J. Nutter and Charlotte I. Nutter, widow of said decedent, took possession of the sanitarium, and continued to run the same under the name of the Nutter-Webster Company until May, 1897, when Isaac W. Nutter and wife and Charlotte I. Nutter, for herself and as guardian, filed their petition in the Morgan Circuit Court for the appointment of a receiver, to which petition appellee and appellants were defendants.    A receiver was appointed, the property sold under order of the court, and the proceeds, after the payment of expenses and the debts of the old Nutter-Major partnership, were paid to appellee and Charlotte I. Nutter on account of money borrowed by them to complete the sanitarium, after the death of Albert H. Nutter.    Under the terms of the contract appellants were to pay appellee $8,000 for a one-third interest, $3,000 of which they paid cash.    They assumed the payment of one-third of an $8,000 mortgage, to wit, $2,636, and gave two notes aggregating $2,364.    Neither of these notes was due when the receiver took possession of the property.

In the receivership proceedings both the creditors of the old firm, the Nutter-Major Sanitarium Company, and the new firm, the Nutter-Webster Company, filed their respective claims, which were allowed and paid out of the assets.

Among the claims that were thus paid were the following: Eight hundred dollars to Sarah C. Nutter upon the option to purchase certain real estate used in connection with the sanitarium; $50 as rent to Sarah C. Nutter for the same real estate, which appellants assumed and agreed to pay under their contract; $8,000 due the Home Building Association, which was secured by the mortgage on the property, one-third of which appellants assumed and agreed to pay; $220 delinquency in dues to said building association on said mortgage; and $268.15 for insurance upon the sanitarium property. There was also allowed and paid to a bank $205 upon a note executed by the new firm of the Nutter-Webster Company; $46.61 to appellant Ellery C. Webster as a physician, for services rendered the firm, and several other items, aggregating $824, for supplies furnished the new firm, that were due and unpaid when the receiver was appointed. Appellants made no objections to the appointment of a receiver, and voluntarily appeared to the petition. They remained in possession of the property until it was sold, and voluntarily surrendered possession thereafter. The $3,000 paid appellee was by him immediately turned over to the surviving partnership of the old Nutter-Major Sanitarium Company, and it was all applied to the firm's indebtedness. Appellants did not pay one-third of the $8,000 mortgage, nor any part of the rent for the real estate held under an option to purchase, nor the taxes and insurance on the buildings, nor the building and loan dues, nor any of the costs of the suit mentioned in the contract. Neither did they pay the first purchase-money note when it became due, but after the property had been sold, and the last note became due, they tendered to appellee the amount due on both notes, and demanded a deed.

At the time of the execution of the contract sued on, appellee, the heirs of Albert H. Nutter, and Isaac W. and Emily J. Nutter, as husband and wife, each owned an undivided one-third interest in the real estate upon which

the sanitarium was erected. They were tenants in common. The petition for the appointment of a receiver alleged two grounds therefor: First, that the surviving partnership of the old firm of the Nutter-Major Sanitarium Company, after the death of Albert H. Nutter, one of the partners, had not been settled; and, second, that appellant Ellery C. Webster, by constant habits of dissipation, had become incompetent to attend to business, that his conduct among the guests and patients had driven away the patrons of the sanitarium and destroyed its business, and that by improvident contracts for help and supplies, and mismanagement of its business, the firm had large bills for labor and supplies which they were unable to pay.

In view of the fact that counsel do not fully agree as to the construction that should be given the contract sued on, it is of primary importance first to determine, from the instrument itself, if that can be done, just what appellee sold to appellants, and what the latter agreed to purchase. From the view we have taken of it, the contract is easily construed, as there is nothing ambiguous or uncertain about it. The contract should be construed in view of the law that governs it. Before the death of Albert H. Nutter the real estate which appellee sold and agreed to convey to appellants was owned by Albert H. Nutter, Isaac W. and Emily J. Nutter (the latter two as husband and wife), and appellee, as tenants in common. Albert H. Nutter, Isaac W. and Emily J. Nutter, and appellee, each owned an undivided one-third interest. They also had leased from one Sarah C. Nutter a part of the lot upon which the sanitarium was being erected, and held an option thereon for its purchase at a fixed price. Prior to the death of Albert H. Nutter the parties just designated were partners in conducting a sanitarium situate on the real estate in controversy. By his death that partnership was at once dissolved, and the partnership business immediately became subject to settlement under the provisions of the statute.

§8122 Burns 1901; *Needham* v. *Wright,* 140 Ind. 190. As no steps were taken under the statute to settle the partnership business by the surviving partners, the court could, upon proper application, have appointed a receiver at any time for that purpose. *Smith* v. *Davis,* 12 Ind. App. 635. If after the death of one partner the surviving partners continue the business, they will be regarded as trustees, and hold the assets of the firm for the benefit of creditors and other persons interested therein. *Bollenbacher* v. *First Nat. Bank,* 8 Ind. App. 12. The personal property of a partnership is subject to partition, and a court of equity has the power to decree such partition. *Robinson* v. *Dickey,* 143 Ind. 205, 52 Am. St. 417.

So at the time of the execution of the contract between appellants and appellee there was not, in law, any partnership between the original partners, and the surviving partners and the heirs of the deceased partner held their respective interests in the partnership assets subject to the rights of creditors. Appellants were chargeable with notice of these facts, and were bound to know that the partnership business of the old firm had not been settled, and that, as the surviving partners had not moved in the matter, a receiver could at any time be appointed to wind up the business. By the terms of the contract, appellee sold to appellants his undivided one-third interest which he held in the original partnership, and this included both his interest in the real estate, the business, and the personal assets of the firm. It included also his interest in the lease, and the option it contained. The contract does not bind appellee to convey to appellants any fee simple interest in the leased real estate, but simply transfers his interest therein to appellants, and confers upon them the right to purchase at the price designated. From the plain language of the contract, it will admit of no other construction. After appellants purchased appellee's interest, a new part-

nership was formed and the business continued. Appellee was not liable for any of the debts or obligations of the new partnership.

Under the undisputed facts, the decision is narrowed to a single question, and that is: Is the appellee relieved from the penalty of his bond, by the divestment of the title to the real estate and the dissipation of the partnership assets of the firm, by the judicial sale under the receivership proceedings? As to the right of one of the surviving partners to have a receiver appointed to wind up the affairs of the partnership, there can be no doubt. It is also beyond the realm of legitimate debate that the court had the right to order the sale of all the partnership property and assets for the payment of existing liabilities, and distribute the residue between the survivors according to their respective interests. It is further unquestionably true that the sale by the receiver under order of the court was a judicial sale. All parties in interest, including appellants and appellee, were made parties in the receivership proceedings. Their rights prevailed when the contract was made, and the law governing them was then fixed, and this law must be read into the contract, as a part of it, and all parties in interest are bound by it.

The case of *Milligan* v. *Poole,* 35 Ind. 64, is relied on as affirming the doctrine that appellee is not liable on his contract to convey, because his title was divested by a judicial sale. The facts upon which that case was decided were these: Buchanan and Milligan owned a tract of real estate in equal shares, as tenants in common. Milligan sold his undivided one-half interest to appellees, gave them a bond for a deed on their payment of the purchase money, and they went into possession. They paid the first two payments as they matured. Buchanan then filed a petition for partition, making appellees and appellant parties. Milligan filed an answer, and also a cross-bill, by the latter of which he set up his contract with appellees, showed his in-

terest under it, asking that his interest be protected, and offered to convey to the purchaser if the court should so order. In his cross-bill he also stated that the property could not be divided in kind, but would have to be sold. Appellees defaulted. Partition was decreed. Commissioners were appointed, and reported that the real estate was not susceptible of division without injury. Thereupon a commissioner was appointed to sell, sale was made under the decree, and the commissioner was ordered to pay costs and expenses, pay one-half the residue to Buchanan, and the other half into court, for the parties whose rights were not then settled. At the subsequent term the commissioners reported the sale, appellees appeared, and on their motion the answer and cross-bill of Milligan were stricken out, to which he accepted, and saved the question by a bill of exceptions. Appellees filed a petition setting up their contract with Milligan; averred that they had paid $800 of the purchase price; that there remained to be paid, when due, $1,700; that they had performed all their part of the contract; that Milligan had permitted the land to be sold, had failed to protect them in their possession, from which they had been evicted by the sale under the order of the court; and that he had thus made it impossible for him to perform the contract. They offered to surrender the land, and asked a return of the money they had paid, and the surrender of their notes. A demurrer to this petition by Milligan was overruled. The trial court ordered that eight twenty-fifths of the money paid into the court should be paid appellees, and seventeen twenty-fifths be paid to Milligan, that Milligan surrender the unpaid notes, and that appellees should surrender the contract.

On appeal the Supreme Court decided the case on the action of the court in striking out the answer and cross-bill of Milligan. The court said: "In this State, it is provided by statute that all persons holding lands as joint tenants, or tenants in common, or tenants in coparcenary,

may be compelled to divide the same as provided for in the act. \* \* \* What, then, were the rights of the parties in this case? In the first place, we do not think that the sale of the land in the suit for partition was any breach of the terms of the bond. When the purchasers, Poole and Magill, entered into the contract with Milligan for the purchase of an undivided half of the property, it must be held that they knew that Buchanan had the right, at any time, to compel partition of the lands, or in the event that a division could not be made, to have the property sold. Such partition or sale could no more be a breach of the terms of the bond, than it would have been a breach of the covenants in the deed if the legal, instead of an equitable, title had been conveyed. Such contracts must be regarded and treated as made with reference to the legal incidents which pertain to the subject of them. It is contended that the sale put it out of the power of Milligan to convey. This is true; but while this is true, it is equally true that the sale made it unnecessary for him to convey. A suit for partition is an action *in rem.*, and the land having been sold in conformity to a judgment in a suit to which Milligan and also Poole and Magill were parties, their interests in the land were gone. Milligan was no longer bound to convey, and Poole and Magill were no longer in a condition to demand a conveyance. The same act which put it out of the power of Milligan to convey also deprived Poole and Magill of the right ever to demand a conveyance. It is said that Milligan should have purchased the land at the sale and thus have retained the right to convey, when the time arrived, and protected his vendees in the right to the possession. But may it not with equal propriety be said that Poole and Magill should have purchased, and thus preserved their rights as vendees and kept themselves in position to assert their rights as such? There was, in this case, a valid contract for the sale of the real estate, the purchasers were put in possession, and had

paid part of the purchase money. The vendor held the legal title only as security for the payment of the residue of the purchase money. His relation to the property was somewhat like that of a mortgagee. *Amory* v. *Reilly,* 9 Ind. 490. Had the property in question consisted mainly in buildings, and had they been destroyed by fire, without any fault of the vendees, it would have furnished them no excuse for the nonpayment of the purchase money, and the loss would have fallen on them. *Thompson* v. *Norton,* 14 Ind. 187. We think that where land in which there is both a legal and an equitable ownership, or on which there is a lien, is sold, in a proceeding for partition, the rights of the parties interested are the same, in the proceeds, that they were in the land. *Caldwell* v. *Bank of Salem,* 20 Ind. 194."

Ordinarily, an obligor will be required to perform the conditions of his bond, but there are exceptions to the general rule. Thus performance is excused by the law, and that is whenever, for any reason other than the act of the obligor himself, performance becomes impossible. 4 Am. & Eng. Ency. Law (2d ed.), 686; *Hayden* v. *Phillips,* 89 Ky. 1, 11 S. W. 951; *Baylies* v. *Fettyplace,* 7 Mass. 325; *Ames* v. *Belden,* 17 Barb. 513. Also, if, by the act of the obligee, performance is rendered impossible, the obligor is excused from liability for nonperformance. 4 Am. & Eng. Ency. Law (2d ed.), 687; *United States* v. *Maloney,* 22 Wash. L. Rep. 785; *Dwelley* v. *Dwelley,* 143 Mass. 509, 10 N. E. 468; *Pioneer Sav.; etc., Co.* v. *Freeburg,* 59 Minn. 230, 61 N. W. 25; *Olive* v. *Alter,* 14 Mo. 185; *People* v. *Cushney,* 44 Barb. 118. In New Hampshire it was held that nonperformance is excused in case the obligee neglects or refuses to act, where, by his aid, the condition, otherwise impossible, could have been performed. *Pindar* v. *Upton,* 44 N. H. 358.

Without reiterating the obligations imposed upon appellants by the contract, it is sufficient to say that the evidence

shows that they did not perform all of them. They did not pay one-third of the mortgage of $8,000 which they assumed. They did not pay the rental on the leased real estate. They did not keep up the payment of dues, premiums, and interest payable to the mortgagee, nor the insurance premiums for the protection of the mortgagee. They did not pay the taxes on the property, nor the liabilities of appellee in a certain case then pending, including costs chargeable to him. All these they assumed by their contract.

Query: Can an obligee in a bond require full performance on the part of the obligor while the former is in default? As above indicated, the appellants were bound to know that when they contracted for the property they took it subject to all the rights of the parties in interest, and with all the legal incidents pertaining to it. They knew that a receiver could be appointed to close up the business of the preëxisting partnership, that any interested party could apply for partition, and that, if the property was not kept intact, appellee could not convey under the contract. By a decree of the court, in a proceeding in which appellants and appellee were parties, it was put beyond the power of appellee to convey to appellants. We do not see any difference, in principle, upon the facts here presented, between this case and that of *Milligan* v. *Poole,* 35 Ind. 64.

As was said in that case, the appellee here was under no greater obligation to protect his title in the receivership proceedings and sale, so as to enable him to perform the obligations of his bond, than appellants, who were in possession, were to protect the title and make it possible for him to convey. If they had purchased at the sale they would have been in position to assert their rights as vendees.

If in the Milligan-Poole case, *supra,* the sale of the real estate under the partition proceedings put it out of the power of the vendee to convey, and made it unnecessary for

him to convey, so here the sale under the receivership proceedings would produce the same result.

The judgment is affirmed.

Roby, J.—This action was brought by appellants. They sought thereby to recover money paid by them to appellee under the terms of the contract hereafter set out. Three affirmative paragraphs of answer were filed, and also a general denial. There was no reversible error in overruling demurrers to the second, third, and fourth paragraphs of answer, for the reason that they amounted to no more than argumentative denials. The cause was submitted to a jury, and at the close of the evidence the court directed a verdict for the defendant. This action presents the question for decision, and requires a consideration of the evidence.

It appears that Isaac W. and Emily J. Nutter, as one party, Albert H. Nutter, and Sylvanus Major, the appellee, were partners under the style of Nutter-Major Sanitarium Company, engaged in the erection and operation of a sanitarium at Martinsville, Morgan county, Indiana. The firm owned in fee the northwest quarter of out-lot thirty-seven in said town, and had a leasehold interest in and option to purchase the northeast quarter of said out-lot. They were making extensive improvements on said property, when, in January, 1896, Albert H. Nutter died, leaving a widow and two children, his heirs. No settlement of the partnership business was had. The widow and the surviving partners continued to build and equip the sanitarium, which was finished in May, 1896. On June 17, 1896, appellant Ellery C. Webster, prior to that time employed as a physician in said institution, and Sarah C. Webster, his wife, entered into a contract with appellee by the terms of which appellee sold to "said Webster and Webster his undivided one-third interest in the Nutter-Major Sanitarium, situated on the north half of out-lot or block No. 37 in original plat * * * for and in consideration of the sum of $8,000 * * * said Major

shall, at the time of the payment of the balance of said pur-
chase price, convey to said Webster and Webster by deed
all his interest in said sanitarium and said grounds, and
free from liens executed by him, except as to said building
association loan, which said Webster and Webster assume
to pay." The contract further stipulated for the payment
of $3,000 by appellants in cash, which sum was paid by
them, $2,364 by note and $2,636 by the assumption of an
existing mortgage lien. They also undertook to pay taxes
and insurance, and to hold appellee harmless from the re-
sult of certain pending litigation which has since resulted
favorably to him. It was expressly stipulated that the
option held upon part of said real estate was sold to appel-
lants. Appellants took possession of said sanitarium,
together with the representative of the deceased partner
and the owners of the other share, and continued to run the
same under the name of the Nutter-Webster Company until
May, 1897, when said partners, other than appellants,
instituted an action in the Morgan Circuit Court, which
resulted in the appointment of a receiver and the sale of the
property. Two grounds were alleged for the receivership:
(1) That the partnership dissolved by the death of Albert
H. Nutter had not been settled; (2) that Major had sold
his interest in the sanitarium to the Websters, and that
through misconduct on their part the firm had incurred
large indebtedness, which it was unable to pay, and that
the property of the firm was in danger of being wasted.
Out of the proceeds of the sale, creditors of the old firm
and the new firm were paid indiscriminately. Appellants
agreed to the appointment of the receiver, Ellery C. Web-
ster filing a claim for services as physician. Appellants'
position is that the property, i. e., the undivided one-third
of the real estate described, was sold; that appellee did not
own it, and did not acquire or convey title thereto, but that
it was exhausted by the prior claims of the old partnership
creditors, and, the surviving partnership having the prior

title and right, appellee has failed in his engagement, and should not be allowed to retain the $3,000 paid to him. Appellee sold his undivided one-third interest in the sanitarium, and agreed to convey it and the grounds free from liens executed by him. It was not stipulated that the conveyance should be with covenants of warranty.

In *Locke* v. *White,* 89 Ind. 492, cited and relied upon by appellant, it was held that a deed conveying and warranting certain described real estate estopped the grantor from setting up an after-acquired title thereto, although the deed concluded with a recital to the effect that it was the intention to convey the entire interest of the person named therein. The authority is not applicable to the case at bar. There are here no words of general warranty or conveyance, and no attempt or agreement to sell anything except an interest. "Where a deed with covenant of warranty purports only to convey the interest of the vendor, it amounts to no more than a quitclaim deed." *Shumaker* v. *Johnson,* 35 Ind. 33; *Locke* v. *White, supra.* The determining point in the case is as to what was bought and sold by the respective parties. If appellants got what they bought, that is an end to it. If they did not get what they bought, appellee can not keep the money received by him, and no default upon their part is shown justifying him in attempting to do so.

The question is one of difficulty. It does not appear in the contract, nor from the evidence, what was included in the term "the Nutter-Major Sanitarium." Whether any part of the consideration was personal property, whether the element of good will entered into the transaction or not, is entirely conjectural. If it were to be held that the contract amounted to an agreement to convey an undivided, unencumbered one-third part of the real estate described, such holding would of necessity be based upon evidence extrinsic to the writing, and descriptive of the thing sold and warranted. The conduct of the parties themselves

after the sale, and during the pendency of the proceedings in which the receiver was appointed and the property sold, indicates their understanding to have been that appellants were substituted for Major in the ownership of the property, the payment of firm debts, and the continuance of the business under the new name. Where the contract is indefinite, the construction and practical interpretation placed upon it by the parties themselves will control. *Gardner* v. *Caylor,* 24 Ind. App. 521, 525. The one-third interest was turned over to appellants. There was no agreement that it should be free from partnership obligations; the stipulation in that respect being limited to liens "executed by him" (appellee). No charge of fraud is made, no mutual mistake alleged, and no reformation prayed. The contract will therefore be taken as written and construed by the makers.

There is no answer setting up former adjudication, and that issue is not in the case. *Stevens* v. *Reynolds,* 143 Ind. 467, 483, 52 Am. St. 422; *Cleveland, etc., R. Co.* v. *Closser,* 126 Ind. 348, 367, 9 L. R. A. 754, 22 Am. St. 593.

Much stress has been laid, in argument, upon *Milligan* v. *Poole,* 35 Ind. 64. It was held there that the purchaser of an undivided interest in real estate took it subject to its legal incidents. The controlling question in this case is, what estate was purchased? So that discussion of *Milligan* v. *Poole* is merely academic.

The judgment is affirmed.

COMSTOCK, J.—I concur in the result reached in the foregoing opinions of my associates.