### NATIONAL SURETY CO. v. JEAN.

Circuit Court of Appeals, Sixth Circuit.
December 13, 1929.

No. 5234.

A. L. Heiskell, of Memphis, Tenn. (M. J. Anderson, of Memphis, Tenn., on the brief), for appellant.

C. M. Bryan and John Vorder Bruegge, both of Memphis, Tenn., for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge. This is an action upon an attachment bond. Two questions are involved: (1) The existence of a cause of action in the plaintiff below, here appellee; and (2) the proper measure of recovery. Elizabeth N. Jean and her husband, C. W. Jean, were independently engaged in business at Worthington, Ind., Mrs. Jean operating a general merchandise store and Mr. Jean being engaged in the produce business under the corporate name of The C. W. Jean Company. This latter company became insolvent and one Harold L. Brown was appointed receiver. The books of the company showed an account styled "Elizabeth N. Jean, Residence," upon which there was an apparent indebtedness due the receiver from Elizabeth N. Jean of over $7,000. Accordingly, under authority of court, the receiver brought an action against the plaintiff below and on February 18, 1921, being advised that Mrs. Jean had sold her business in violation of the bulk sales law, filed an affidavit in attachment. Under the order of attachment which issued, the sheriff seized the store of Mrs. Jean. On March 10, 1921, Mrs. Jean filed an answer and counterclaim admitting the investment of funds of the C. W. Jean Company in the improvement of property standing in her name, but denied that this created any personal obligation on her part or liability to The C. W. Jean Company other than that the company thus acquired a proportionate ownership in said real estate. The appellant, National Surety Company, executed the attachment bond and thereby undertook that the plaintiff in that action would duly prosecute his proceedings in attachment therein, and that it, as surety, would pay "all damages which may be sustained by the said defendant if the said proceedings of the plaintiff shall be wrongful and oppressive."

On March 18, 1921, or eight days after filing her answer and counterclaim, Mrs. Jean filed a voluntary petition in bankruptcy and on May 19, 1921, filed a supplemental answer in the attachment proceeding setting forth the fact of adjudication in bankruptcy and asking that the suit be dismissed for want of jurisdiction in the state court. No definite action was taken in the state court until March 17, 1923, when the suit was dismissed for lack of prosecution. Subsequent steps were taken, almost three years later, to set aside this dismissal for lack of prosecution and to dismiss the action, nunc pro tunc, for want of jurisdiction, upon the defendant's supplemental answer; but we do not consider it necessary to pass upon the validity or effect of these judgments of dismissal.

After the filing of the voluntary petition in bankruptcy, Brown, receiver, filed his proof of claim before the referee in bankruptcy and said claim was at first allowed. Subsequently, on August 18, 1921, such allowance of claim was reconsidered and the same was disallowed. Why it was disallowed is not apparent inasmuch as Mrs. Jean had already admitted the interest of the company in her property by her supplemental answer in the state court. No petition for review was filed by the receiver. An offer of composition was ultimately accepted by the creditors and confirmed on May 29, 1922. Thereafter, on November 7, 1925, the plaintiff below brought her action on the attachment bond upon which she recovered a verdict and judgment.

The attachment bond executed by appellant was a statutory bond and it is conceded by both parties that the decisions of the courts of Indiana defining its obligations are binding upon this court, as a matter of local law, and without examining or deciding this question we pass to a consideration of those decisions.

It seems definitely established that the Indiana attachment bond is breached and liability arises thereunder if the plaintiff either fail to recover, or abandon his action, or suffer a voluntary nonsuit, or if the attachment be discharged for want of sufficient grounds for issue or because of defective affidavit. In each of such cases the attachment is considered "wrongful and oppressive." Draper v. Vanhorn, 12 Ind. 352; Harper et al. v. Keys, 43 Ind. 220; Sannes v. Ross, 105 Ind. 558, 5 N. E. 699; Vurpillat v. Zehner, 2 Ind.

App. 397, 28 N. E. 556. The statutes of Indiana also permit the defendant in an attachment proceeding to give either a forthcoming bond conditioned that the property shall be properly kept and taken care of, and shall be delivered to the sheriff on demand, or that he will pay the appraised value of such property not exceeding the amount of the judgment and costs (Burns' Ann. St. 1914, § 958 [Burns' Ann. St. 1926, § 996]), or a bond for restitution conditioned that the defendant will appear to the action and will perform the judgment of the court (Burns' Ann. St. 1914, § 963 [Burns' Ann. St. 1926, § 999]). In the event the bond for restitution is given, the defendant, in legal effect, is said to waive all right to assert that the attachment proceedings were wrongful and oppressive. The contrary is so where the forthcoming bond is given. Bick v. Lang, 15 Ind. App. 503, 44 N. E. 555. Compare, also, Webster et al. v. Major, 33 Ind. App. 202, 71 N. E. 176; Milligan v. Poole, 35 Ind. 64. The first contention of appellant to be met, therefore, is that the attachment was dissolved and discharged under section 67f of the Bankruptcy Act (11 USCA § 107(f) upon the adjudication in voluntary bankruptcy, to all intents and purposes as completely as upon the giving of a statutory bond for restitution, and that the obligation of the surety was thereupon terminated because the condition of the bond became impossible of performance.

The answer to this contention is that the undertaking of a surety upon an Indiana attachment bond has two distinct aspects. In one of these aspects the surety undertakes that the plaintiff will duly prosecute the proceedings in attachment. This condition is breached by abandonment, dismissal, or voluntary nonsuit. In its other aspect the surety agrees to pay all damages which may be sustained by the defendant if said proceedings of the plaintiff shall be wrongful and oppressive. The attachment is wrongful and oppressive if the defendant is not indebted, or if the statutory grounds for attachment do not exist. Thus the attachment may be wrongful and oppressive as of the date of seizure and substantial injury may have been suffered as a result. The mere fact that the attachment as such is subsequently discharged does not release the surety from liability as to this latter element of breach, as is witnessed by the instances of discharge of attachment because of lack of statutory ground therefor or defect in the affidavit; and performance of the obligation to pay damages which were sustained by reason of the wrongful and oppressive nature of the attachment is not rendered impossible by the discharge of the attachment or even by the termination of the litigation, if we concede that the adjudication in bankruptcy, to all practical effect, so terminated the state court proceedings. But after discharge of the attachment, the defendant in such proceedings can not claim a breach of the bond arising from failure of the plaintiff to "duly prosecute his proceedings in attachment." This is all that the case of Bick v. Lang, supra, establishes.

Nor do Webster v. Major and Milligan v. Poole aid the appellant. These were both actions upon bonds for title. In each, performance was rendered impossible by court decree. Neither they, nor the cases elsewhere, which turn upon release of the surety in the event of impossibility of performance of the condition of the bond, have any application here where no claim is based upon other breach than the wrongful and oppressive nature of the attachment ab initio, arising from the nonexistence of indebtedness.

On the other hand, we are unable to concur in the contention of the appellee that the filing of his claim in the bankruptcy court by Brown, receiver, was an abandonment of the attachment proceedings which established liability upon the bond without regard to the question of actual indebtedness. The adjudication in bankruptcy terminated the lien of the attachment (section 67f, 11 USCA § 107 (f) and stayed the proceedings in the state court at least until the time for discharge had expired (section 11, 11 USCA § 29). While the Bankruptcy Act recognizes proof of debts reduced to judgment after the filing of a petition in bankruptcy (section 63, 11 USCA § 103), and while such judgment would be conclusive after intervention by the trustee, no authority is cited, and we know of none, which holds that such judgment would bind the estate as to amount, where the trustee had not intervened or had not been substituted for the bankrupt as defendant. Doubtless the trustee may be given authority to intervene or the bankruptcy court may adopt the proceedings then pending in a state court as the means of liquidating the claim, but to all intents and purposes the filing of the voluntary petition put an end to practical prosecution of the state court action. Ordinarily, proceeding to judgment under such circumstances would be a vain act and this is emphasized in the present case by the fact that the bankrupt filed a supplemental answer setting up the bankruptcy proceeding as divesting the state court of jurisdiction. The attachment plaintiff cannot be charged with abandonment in accepting such position.

of the appellee and in not continuing the apparently vain and impractical attempt at further prosecution of his attachment suit.

We come, then, to the third contention of the appellant: that the disallowance of the claim of the receiver in the bankruptcy court was not binding upon the appellant, which was not a party to such bankruptcy proceedings, and that the record of such judgment was improperly admitted as evidence that no debt existed. It was not held that this evidence alone was conclusive, but the court left it to the jury to say whether upon all the proofs, including the record of the bankruptcy court, the debt was owing.

 This case differs materially from the ordinary case of fact found as the basis of a judgment, which finding of fact would not bind the surety if neither a party to the case nor there by representation, for the sole question with which we are here concerned is one of status—whether the relationship of debtor and creditor existed as between Mrs. Jean and The C. W. Jean Company upon the date of the attachment. This question has been definitely and permanently determined by a court of competent jurisdiction and could not be re-examined as between the parties. The bankruptcy proceeding in which it was determined was a proceeding in rem. The appellant had actual notice of the adjudication through the answer of the present appellee in the attachment suit, as well as constructive notice, and could have appeared before the bankruptcy court if not already there by representation. If Brown, receiver, was a creditor of Mrs. Jean he had a right to share in her estate. If he was not a creditor he had no such right. The question of his status was therefore squarely before the court in a proceeding in rem and we are of the opinion that the judgment of that court was so far a judgment in rem, or quasi in rem, as to be binding upon the appellant in the absence of any evidence of collusion or fraud.

In Candee v. Lord, 2 N. Y. 269, 275, 51 Am. Dec. 294, upon a closely analogous question, the court said: "A judgment, therefore, obtained against the latter" (the debtor) "without collusion, is conclusive evidence of the relation of debtor and creditor against others." This is the converse of the present case but we see no difference in principle. See, also, Eppright v. Kauffman, 90 Mo. 25, 1 S. W. 736; Kolb v. Mall, 187 Iowa, 193, 174 N. W. 226; In re Henry Ulfelder Clothing Co., 98 F. 409 (D. C. Cal.); and compare Goodrich v. Ferris, 214 U. S. 71, 80, 81, 29 S. Ct. 580, 53 L. Ed. 914. The bankruptcy court has determined that Brown, receiver, was not a creditor of the appellee at all, not merely the extent of the indebtedness. The appellee rests her present action upon this total absence of status as a creditor, as establishing the wrongful nature of the attachment, and we are of the opinion that the charge of the court was quite as favorable to the appellant as it had reason to ask.

██ We come, then, to the final contention of the appellant that the court erred in instructing the jury that they might allow damages suffered by reason of the bankruptcy per se on the theory that the filing of the voluntary petition was caused or necessitated by the attachment proceedings. This question is preserved by exceptions to the charge as well as by requests for special charges presented by the appellant and refused by the court. In the fourth of such requests for special instructions the appellant asks that the jury be instructed that they could not allow the plaintiff any damages for injury to her business after the filing of the petition in bankruptcy and in the first of such requests the appellant likewise asked the instruction that damages could not be allowed if resulting from the sale of plaintiff's property or other proceedings in the court of bankruptcy. That substantial injury may have been suffered as between the date of the filing of the affidavit in attachment February 18, 1921, and the date of adjudication in voluntary bankruptcy, March 18, 1921, cannot be denied. If the relationship of debtor and creditor as between appellee and the receiver of The C. W. Jean Company did not at that time exist, the attachment was wrongful and oppressive. The language of the attachment bond, however, is to be strictly construed in favor of the obligors (Waring v. Fletcher, 152 Ind. 620, 52 N. E. 203) and it would therefore seem obvious that the undertaking to "pay all damages which may be sustained by said defendant" should be limited to such damages as directly and proximately resulted from the wrongful and oppressive nature of the attachment, and to exclude such as were the result of other independent and efficient cause.

 We cannot view the filing of a voluntary petition in bankruptcy as other than wholly independent of and disconnected from the wrongful attachment, whether dictated by motives of equality of treatment to all creditors or a determination to at least defeat payment in full to the attaching creditors. There was nothing compulsory in this voluntary act on the part of appellee. Injury to credit, loss of profits, diminution of business, or other loss directly attributable to the attachment might be recovered, but the period

for the computation of such damages ended, so far as damage to her business was concerned, with the filing of the bankruptcy petition. The portion of the first special instruction asked which was not given to the jury and the fourth special instruction which was refused in whole should have been given.

The judgment of the District Court will therefore be reversed and the cause remanded for a new trial.