Thomas L. J. Corcoran, J.
This is an assessment of damages after the granting of the plaintiff’s motion for summary judgment. The action was brought by the plaintiff, Henri Plessner, against the defendant as surety on undertakings in the principal sum of $5,000 furnished in aid of an attachment against the plaintiff’s property.
*520 The action in which the attachment issued was commenced in the Supreme Court, Queens County, against Plessner and others. The warrant of attachment issued on June 3, 1941 and was levied on June 4,1941 against Plessner’s cash and securities on deposit with the Chase National Bank of New York. The warrant of attachment was for $92,527.69, which was the amount demanded in the complaint in that action. The attachment was vacated on October 3, 1941 on Plessner’s motion. A stay was granted pending an appeal by the attaching creditor to the Appellate Division, Second Department. The vacatur was affirmed by the Appellate Division on December 22, 1941, Silberfeld v. Swiss Bank Corp. (263 App. Div. 851) and a motion for leave to appeal to the Court of Appeals was denied by the Appellate Division on January 12, 1942 (263 App. Div. 877).
Plessner brought this action to recover on the attachment bonds issued by the defendant to enable the plaintiff in the previous action to procure the warrant of attachment. He claims the following damages sustained by reason of the attachment : (1) counsel fees amounting to $3,000 incurred in vacating the attachment; (2) other expenses for legal disbursements, bank charges and cablegrams amounting to $457.64; (3) depreciation in the value of stocks and securities attached to the extent of $5,000; (4) legal interest of 6% per annum on the cash and securities on deposit with the Chase Bank for the period June 4, 1941, the date on which the attachment was first levied, to June 12,1942, upon which date the property was released from attachment. The total amount claimed by the plaintiff exceeds the amount of the undertakings furnished by the defendant.
The plaintiff is entitled to recover reasonable counsel fees and disbursements incurred in vacating the attachment. The counsel fees recoverable are limited to those for services in moving to vacate the attachment and in opposing the various applications for stays, and in opposing the appeal from the order vacating the attachment. Fees for services rendered to the plaintiff in the previous litigation, not directly referable to the motion to vacate the attachment, may not be recovered. (Northampton Nat. Bank v. Wylie, 52 Hun 146, affd. 123 N. Y. 663; Olsen v. United States Fid. & Guar. Co., 230 N. Y. 31.) Services rendered to other parties who were codefendants with the plaintiff in the previous litigation cannot, of course, be charged to the defendant surety.
The court finds that the reasonable value of the legal services rendered exclusively to the plaintiff in vacating the attachment is the sum of $2,500.
*521 The court finds that the plaintiff incurred expenses as a direct result of the attachment totaling $216.13, consisting of $101.13 incurred by the plaintiff’s attorneys; $65 in charges by the depository bank; $50 for cables and translations paid out by the plaintiff himself.
With respect to the claim for damages for the depreciation of the stock and securities, there is no evidence that this depreciation was damage sustained by reason of the attachment within the undertaking of the surety. “ [T]he decrease in the value of the shares did not result from the attachment * * *
but it resulted from a diminution in the market-price of the shares themselves.” (Miller v. Ferry, 50 Hun 256.) There is no evidence of any effort on the plaintiff’s part to sell any of the stocks or securities or to obtain a release of the stocks or securities as surplus, under section 942 of the Civil Practice Act, or to obtain the consent of the attaching creditor to a sale of the stocks or securities. This claimed loss is too remote and speculative to be considered legal damage. (Elsman v. Glens Falls Ind. Co., 146 Misc. 631.)
The plaintiff contends that having lost the use of his property during the period of the attachment, he is entitled to damages amounting to the 6% legal rate of interest on the cash and securities held by the bank for that period of time.
At the time of the attachment, plaintiff had on deposit with the Chase National Bank cash in the amount of $84,169.69 and securities valued at $25,596.35. No interest was ever paid by the bank to the plaintiff on this account.
The plaintiff relies upon Northampton Nat. Bank v. Wylie (52 Hun 146, affd. 123 N. Y. 663, supra) as authority for the proposition that the plaintiff may recover the difference between the bank rate and the legal rate of interest. The case is cited in volume 7 of Carmody, New York Practice (2d ed.) on page 674 as authority for such a rule. But we do not so interpret the law of that case. In the Northampton Nat. Bank case, the attachment tied up funds on deposit in a bank on which interest at 2%% was paid. The attached defendant proved that the funds could have been employed elsewhere at a return of 6%. The court held that the attached defendant was entitled to recover as damage the difference between the bank rate and the rate of interest which the attached defendant could have obtained.
There is language in some of the cases cited by the plaintiff to the effect that the legal rate of interest is the measure of damages for the loss of the use of funds wrongfully attached. We do not consider such language authoritative.
*522 According to the terms of the undertakings, which substantially follow the provisions of section 907 of the Civil Practice Act, plaintiff is entitled to recover, in the event of vacating the warrant of attachment, all damages which he ‘ ‘ may sustain by reason of the attachment.” Defendant’s liability to plaintiff is limited by the quoted language to damages naturally and proximately resulting from the attachment. (Fidelity Co. v. Bucki Co., 189 U. S. 135; National Sur. Co. v. Jean, 36 F. 2d 468 [C. C. A. 6th].)
The plaintiff has the burden of establishing what those damages are. We will not assume, in the absence of evidence, that this plaintiff could have employed his money so as to yield 6%.
There is no evidence that plaintiff would have invested these funds in securities yielding 6% per annum during the period of time of the attachment. There is, in fact, no evidence from which the court would be justified in inferring that the plaintiff could have obtained any particular yield or interest rate during that period of time. In the absence of such proof, the court holds that the plaintiff has failed to show damage sustained by reason of the attachment in the loss of the use of the cash and securities.
There are further reasons why the plaintiff must fail in his claim for damages for loss of use of his funds.
During the period of the attachment plaintiff was a nonresident alien subject to Executive Order No. 8389 signed by the President on April 10,1940, as amended by Executive Order No. 8565 of 1940 (see U. S. Code, tit. 12, § 95a, note). That order prohibited transactions by aliens subject to it relating to 11 All transfers, withdrawals or exportations of, or dealings in, any evidences of indebtedness or evidences of ownership of property ” (§1, subd. E). The order authorized the Secretary of the Treasury to make regulations for the granting of licenses excepting transactions from the provisions of the order (§ 1). Plaintiff offered in evidence nine such licenses issued by the Federal Reserve Bank to him. The motion to strike these from the record is denied. Seven of these licenses had expired prior to the date of the attachment, and two which authorized a total withdrawal of $2,500 were effective for a limited time during the attachment.
Except for the sum of $2,500 for which licenses were outstanding at the time of the attachment, plaintiff was prohibited from withdrawing the cash or securities. This prohibition on plaintiff’s use of the cash and securities followed from the executive order exclusively. The warrant of attachment, except *523 as to the sum of $2,500, added no prohibition which did not already exist. Since the restraint cannot be attributed to the attachment, neither can any damage which plaintiff sustained as a result of the restraint.
On the basis of the nine licenses, plaintiff asks the court to conclude that the restraint was caused by the warrant rather than the executive order. He states that ‘ ‘ through the Treasury licenses plaintiff had a practically unlimited right and opportunity to use his funds ’ ’ and 1 ‘ that the blocking of these funds was no practical impediment to their use by the plaintiff and that licenses were obtained without difficulty and apparently as a mere formality”.
The court cannot give such meager effect to the terms of the executive order. The President, in the order, stated that he issued it in “ a period of unlimited national emergency ” and that it “is necessary in the interest of national defense and security”. The Secretary of the Treasury in Press Release No. 1 on Executive Order No. 8389, dated June 14, 1941, stated, in part, that the purpose of the order was 1 ‘ to prevent the use of financial facilities of the United States in ways harmful to national defense and other American interests, to prevent the liquidation in the United States of assets looted by duress or conquest, and to curb subversive activities in the United States ’ ’. The order was a vital war measure. The court is unwilling to impair its forceful prohibitions by a judgment which would be based on the assumption that exceptions to it were the rule. The court reads the prohibitions with the same seriousness with which they were drafted. The prohibitions, as far as this court is concerned, were effective for all purposes, except as to exceptions actually made by authority of the order.
Plaintiff cites Commission for Polish Relief v. Banca Nationala a Rumaniei (288 N. Y. 332, 338) as authority for the court’s right to assume, as a basis for a judgment, that licenses may be granted in futuro under Executive Order No. 8389. In that case the court sustained an attachment against the property of an alien subject to the order for the purpose of acquiring jurisdiction in rem. The alien urged the order in its own behalf and contended that it immobilized its accounts in New York banks so as to render them wholly unattachablo in the absence of a license from the Secretary of the Treasury. The court held that a “ seizure subject to a license ” was sufficient for the purpose of acquiring jurisdiction in rem over the deposits. The court said that a license might not be refused in the event of a judgment for the plaintiff arid it would not permit the alien to defeat the jurisdiction, of the court, particularly since the Federal *524 Government advised the court that the levy of attachment did not offend national policy implied by the order. In that case, the alien asked the court to speculate, in effect, that a license might not be granted and thus to defeat the court’s jurisdiction. Whether or not a license would eventually be granted was not a question which the court permitted to interfere with acquisition of jurisdiction. That case is quite unlike the case now before the court in which the alien subject to the prohibitions asks damages on the basis of his own assurances that he could have made the prohibitions inapplicable to himself.
Under the licenses in effect during the period of the attachment, plaintiff was authorized to withdraw $2,500 from the bank. He did not do so. Nevertheless, he cannot recover damages for the loss of the use of this amount. The bank held, subject to the warrant, approximately $17,000 more than was necessary. A defendant in an action in which there is an attachment against his property is under duty to minimize the damage done by the attachment. (Olsen v. United States Fid. S Guar. Co., 230 N. Y. 31; Tyng v. American Sur. Co., 69 App. Div. 137, affd. 174 N. Y. 166.) Plaintiff made no attempt under section 942 of the Civil Practice Act to obtain release from attachment of the $2,500 which constituted a surplus holding. During a conference with the court in the previous action, counsel for the defendant herein stated that he would consent to release from the attachment five to six hundred dollars a month. He was never asked for such consents and was not even advised of the two outstanding licenses. Plaintiff’s loss of the use of the $2,500 was due to his own failure to act and he cannot recover damages therefor.
The order granting the motion for summary judgment herein directs an assessment of damages. "While the question of whether interest on the damages assessed is to be computed from the date when the attachment was finally vacated may not be within the precise direction to assess damages, the parties treated the question as before the court, and argued and briefed the point. In order to avoid the necessity of a further motion to add interest, the court will pass upon this question.
An action on an attachment is ex contractu and interest is due from the date when the surety becomes liable for payment in accordance with the terms of the undertaking. Defendant, under the undertakings on which this action was commenced, became liable to plaintiff the day when the attachment was vacated. It is true that the damages were not liquidated on that date and defendant may not have been in a position to know the precise amount which it should have paid. That is not any *525 more determinative in an action on an undertaking on attachment than in any other action on a contract. (See Faber v. City of New York, 222 N. Y. 255, 262.) In Shea v. National Sur. Co. (144 Misc. 613, 614), an action on an undertaking given on an injunction, the court held that interest began to run on the date when the court fixed the damages. In that case, however, the undertaking specified that the damages to be paid were to be “ ascertained and determined by the Court or by a writ of inquiry, or otherwise as the Court shall direct.” The undertaking fixes the date when liability ripens and consequently when interest begins to run. This defendant became Hable to plaintiff on the date when the attachment was vacated. Interest began to run when its Hability attached.
Damages are assessed as follows: $2,716.13, with interest thereon from January 12, 1942.